ASHLEY, RESPONDENT, *v.* ROCKY MOUNTAIN BELL TELEPHONE CO., APPELLANT.

(No. 1,287.)

(Submitted March 18, 1901.   Decided April 22, 1901.)

*Telephones—Lease—Right to Remove Telephone—Forfeiture of Contract — Modification—Jury Question — Evidence— Credibility of Witnesses—Instructions — Tender—Mitigation of Damages.*

1.   A telephone company leased a telephone to plaintiff under a contract requiring plaintiff to pay $16 per quarter in advance on demand, and authorized the company to terminate the contract and remove the telephone on default in payment by serving written notice on plaintiff, and providing that the contract could not be varied or waived except by a writing signed by the general manager of the company. Plaintiff did not pay an installment of rent on Saturday when it became due, on a demand by the collector of the company therefor, by reason of not having a check book, and the collector suggested that the payment be deferred till the succeeding Monday. On that day the plaintiff tendered the sum to the general manager, who informed him that notice of termination had been served at plaintiff's place of business, and the telephone removed. *Held,* in an action against the company therefor, that it was error to refuse to instruct

that the failure to pay the collector on demand authorized the company to forfeit the contract, unless the extension of time, if any, by the collector, was in writing, and signed by the general manager.

2.  Where the defendant telephone company, in an action for removing a telephone from a customer for a default in the payment of rent, contends that it had terminated the contract by service of notice before the plaintiff tendered the rent due, it is not error to submit the question whether the contract was terminated by notice, as authorized by contract, before the amount due was tendered, though the evidence is uncontradicted that it was so terminated, since the jury is the sole judge of the credibility of the witnesses testifying to the service of the notice.

3.  Code of Civil Procedure, Sec. 3390, Subd. 3, requiring the jury to be instructed on all proper occasions that a witness false in one part of his testimony is to be disregarded in others, does not authorize such an instruction without limiting it to wilfully false statements as to material matters.

4.  Error, in giving such an instruction, in designating the plaintiff by name, and authorizing his testimony to be disregarded if he has testified falsely in any part of his evidence, is harmless error when a verdict is returned in his favor.

5.  Where a telephone company terminates a lease of an instrument on the alleged ground of a default in the payment of rent, and afterwards refuses a payment thereof on the ground of such termination, it is not necessary that such tender should be kept good by a deposit in court to authorize the lessee to recover for wrongful removal of the instrument.

6.  Where an action is brought against a telephone company for continuing damages caused by an alleged wrongful removal of a telephone from a customer, the company may plead in mitigation of damages that it afterwards offered to replace the telephone on the payment of certain expenses by the customer, since the customer is required to do every act in his power to decrease the damages resulting from the wrongful act, and the acceptance of the telephone on such condition will not prevent an action for the accrued damages.

*Appeal from District Court, Lewis and Clarke County; H. C. Smith, Judge.*

ACTION by H. H. Ashley against the Rocky Mountain Bell Telephone Company, for damages caused by a breach of contract in removing a telephone rented to plaintiff.  From a judgment in favor of plaintiff, and from an order denying a motion for new trial, the defendant appeals.  Reversed.

*Mr. H .G. McIntire* and *Mr. S. H. McIntire,* for Appellant.

*Mr. A. J. Craven,* for Respondent.

In the original contract no place was designated where the rentals should be paid.  It was therefore alleged and proven that it was the usage and custom of the company to receive its rentals

at the place where its telephones were affixed. This did not contradict the terms of the contract, it interpreted the contract. (*Helme* v. *Phil. Life Ins. Co.,* 100 Am. Dec. 623; 27 Vol. Am. Enc. pp. 807, 808, 834; *Dockman* v. *Smith,* 18 Am. Rep. 495; Civil Code, Sec. 2211; 1 Greenleaf Ev. Sec. 294; *Destreham* v. *Louis Lumber Co.,* 40 Am. St. Rep. 265 and note; *Bowman* v. *First Nat'l Bank,* 43 Am. St. Rep. 874 and note.)

In the case at bar the plaintiff rested quietly, depending upon the promise of extension thus made to him, or upon the withdrawal of the demand until the following Monday. It would be a fraud upon him, having thus acted, to deprive him of the benefit of the promise. The intent of the law is to prevent fraud, not to give it effect. Secton 2050 of the Civil Code was both law and equity before as well as after the adoption of the Codes. There is no pretense that there was any recision attempted of the arrangement made on the afternoon of January 5th, by which Mr. Ashley was to have until Monday to pay his rental. Written contracts varied by parol, if the nature of the modification is not such as the law requires to be in writing. (Beach Modern Law of Conts. Sec. 776.) The fact that the original contract provided that extensions of time or other modifications must be in writing, does not prevent the change by parol. (Beach, *Id.*) A waiver or extension of time of payment is a frequent illustration of the doctrine. (*Id.* Sec. 781; Jones Ev. Sec. 447; see further, *Blood* v. *Goodrich,* 24 Am. Dec. 121; *Freiss* v. *Rider,* 82 Am. Dec. 308; *Langworthy* v. *Smith,* 20 Am. Dec. 652; *Davis* v. *Germaine,* 1 Mont. 210; Beach on Conts. Sec. 845; Bishop on Cont. Sec 795 *et seq.* and Sec. 804.)

As to the attempted defense in the pleadings and evidence that the plaintiff could have procured another telephone from defendant at the same rates, plus fifteen dollars or more installment charges. These so-called installment charges were only another form of the independent hack bill. Putting this sort of defense by analogy in a different setting: Suppose Mr. Ashley had a monopoly of horses in this country and hired a

horse to Mr. Sommers for a specific journey. While the latter was en route Mr. Ashley forcibly and without right took the horse away from Mr. Sommers, but thereafter offered him the same, or a different horse, for the balance of the journey at a higher rate. Would Mr. Sommers be precluded from maintaining a suit for damages because he refused to accept the proposition? If Mr. Sommers must accept the proposition and be subjected to the indignity once in transit, why not also a dozen times? I contend that such acceptance would be a modification of the original contract by mutual consent and consequently a waiver of the previous breach, and that the general doctrine to the effect that one wrongfully deprived of employment or merchandise to which he has a right by contract, should seek employment or similar merchandise from others, does not support the contention of appellant that the law compels him to modify his contract and seek or accept such employment or merchandise at higher rates, from the party who broke the original contract. In the case at bar it was not possible for plaintiff to obtain telephone service from any one but the defendant. (Sedgwick, Sec. 213; *Gulf Ry. Co.* v. *Hodge,* 30 S. W. 831; *Whitmarsh* v. *Littlefield,* 46 Hun. 418; *Havemeyer* v. *Cunningham,* 35 Barb. 515; *Chisholm* v. *P. B. Life Assurance Co.,* 70 N. W. 415.)

As to the error in instruction numbered 10, given by the court: It was the law contained in the Codes. (C. C. P. Sec. 3390, Subdiv. 3.) And the statute was borrowed intact from California, in whose jurisdiction there had been a line of decisions holding that it was proper to follow the wording of the statute, and that the statute itself implied a willingness to swear falsely upon material matter. (*Cameron* v. *Wentworth,* 57 Pac. 650, and cases there cited.) This rule of interpretation accepting the construction of sister states has been followed almost uniformly in Montana and was only departed from when not in harmony with the spirit and policy of our legislation and decisions, and for the strongest reasons. (*Oleson* v. *Wilson,* 20 Mont. 544.)

The only criterion of what the law is, is the statute, if we are fortunate enough to have one bearing directly upon the matter under consideration. And if a litigant requests an instruction and the court gives it in the language of that statute, what overpowering reason is it in this case which would induce the court to overturn precedent and multiply confusion by a decision to the effect that the statute does not state the law? Note how this doctrine of foreign interpretation is reinforced in *Stadler et al.* v. *First National Bank,* and cases therein cited, 22 Mont. 203.

MR. JUSTICE MILBURN delivered the opinion of the Court.

This is an appeal from a judgment in favor of plaintiff and from an order denying defendant's motion for a new trial. The action is for alleged breach of contract.

The complaint alleges that the plaintiff and the defendant on April 10, 1894, entered into a written contract, which is set out at large in the complaint. This contract was for the use of a telephone belonging to the defendant company, for which use the plaintiff was to pay the sum of $15 per quarter in advance and $1 additional for an extension bell, the rental all to be paid on the first day of each quarter. Among other things, the contract provided: "Upon nonpayment of any sum due, * * * the lessor may terminate the lessee's right immediately by written notice mailed to or left at the aforesaid premises, and sever his connection, and remove the instruments." It appears also that the rental was payable upon demand, and, further, that the terms of the contract could not be varied or waived by any representations or promises of any canvasser or other person, unless the same was in writing, and signed by the general manager of the defendant company. On Saturday, January 5, 1895, a quarter's rent being due in advance on the 1st of said month, the collector of the defendant demanded of the plaintiff the sum of $16, which, on account of the fact that the plaintiff did not happen to have his check

book with him at the moment, was not paid; but upon the suggestion of the said collector the payment thereof was deferred until the following Monday morning, at which time the plaintiff handed the full sum of $16, due as aforesaid on January 1st, to the superintendent and manager of the defendant company. This money was then and there refused, and returned to the plaintiff with the statement on the part of the superintendent that the contract of rental and use of the said telephone had been by him, in writing declared terminated, and the telephone removed, on account of default in the payment of the sum due on the first of the quarter, and that said notice in writing had been served by leaving it upon the premises of the plaintiff where the telephone had been in use; the contract providing for such termination, and for such service of notice. Plaintiff alleged that the defendant's telephone system was the only one in the city of Helena, where he was doing business. He sued for $1,900 damages, alleged to have been sustained by him through the falling off of his business at his livery stable, where the telephone instrument had been established under said contract. Plaintiff alleged his willingness, readiness and ability to meet all conditions of the contract in case the telephone had not been removed.

The defendant admits the making of the contract; denies that the sum of $16, due as aforesaid, was paid or tendered; admits that the said telephone was removed from the plaintiff's place of business; but denies that the plaintiff was damaged. It alleged and offered to prove that in the same month of January, after the removal of the telephone in question, the defendant company offered, for the use of plaintiff, to put a telephone into the place of business from which the former instrument had been removed, provided the plaintiff would pay to it the sum of $15, the cost of connecting the plaintiff's place of business with the defendant's system, such cost being necessary because of the fact that on or about the 7th day of the said month the right to the use of the poles near the plaintiff's place of business had been by their owner taken away

from the defendant, plaintiff presumably to comply with the same rules and conditions applicable to other customers of the company, but that this offer was refused by the plaintiff. This latter defense was stricken out by the lower court on special demurrer. Judgment was entered against the defendant for the sum of $500 and costs.

There are numerous assignments of error, only a few of which will it be necessary to consider. The court refused defendant's request for the following instruction: "If the jury believe from the evidence that defendant's collector demanded of the plaintiff payment of the money due for such telephone service, and such payment was not then made, then the defendant had the right to terminate said contract; and this is so even if such collector informed the plaintiff that he might make such payment at some subsequent time, unless the jury further believe from the evidence that the representation or promise of such collector, if any, was in writing, and signed by the general manager of the defendant company." Under the terms of the contract the prayer for this instruction should have been granted.

Several assignments are based upon the interpolation by the court in its charge of the words "before any tender of the amount due," and words of a similar import, the ground of the alleged error being that the evidence was undisputed that a notice in writing terminating the contract and service was served before the alleged tender was made. Inasmuch as the jury were the sole judges of the credibility of the witnesses who testified to the circumstances attending the alleged service of the notice and of the weight to be given to their testimony, we cannot say that, in view of the peculiar facts connected with the whole transaction, they did not have the right to determine the question of service adversely to the defendant.

The defendant complains that the court erred in instructing the jury that "a witness false in one part of his testimony is to be distrusted in others; and if the jury believe that the witness H. H. Ashley, or any other witness in this case, has

testified falsely in any part of his evidence given before you, you should distrust that witness as to other parts of his testimony." For the reasons laid down in *Cameron* v. *Wentworth,* 23 Mont. 70, 57 Pac. 648, it was error to give this particular charge to the jury, notwithstanding the language in Subdivision 3 of Section 3390 of the Code of Civil Procedure, which provides that the jury are to be instructed on all proper occasions "that a witness false in one part of his testimony is to be distrusted in others." The words "wilfully" and "material" should be used in proper places in such instructions. The error in said instruction, so far as the special reference to H. H. Ashley, who is plaintiff and respondent, is concerned, was not prejudicial to him, the jury having found in his favor; and, he being the respondent, we cannot consider or pass upon the same.

It is further assigned as error that the court refused to charge the jury that the tender alleged to have been made by the plaintiff the day that defendant claims to have terminated the contract and removed the telephone should have been "kept good, and paid into court for defendant's use." The rent was payable in advance, and was refused by the defendant. The manager of the defendant company declared that he would not render service longer. By what rule or principle of law should the plaintiff have laid aside the $16 for the use of the defendant, when service, for which he should pay in advance, was positively refused? If the telephone had been put back immediately, then he would have owed in advance, and then he would have been obliged to keep the money ready to pay, if refused for any reason by the defendant. When a tender is refused by the party to whom it is made, and the contract is by him ignored, or declared terminated, it is not necessary for the other party to keep the tender good, or to make further tender. (*McCormick Harvesting Machine Co.* v. *Markert,* 107 Iowa 340, 78 N. W. 33; *Williams* v. *Patrick,* 177 Mass. 160, 58 N. E. 583, and cases cited; *Hills* v. *Bank,* 105 U. S. 319, 26 L. Ed. 1052; 10 Rose, Notes U. S. Reports, p. 295; and

*Schultz* v. *O'Rourke,* 18 Mont. 418, 45 Pac. 634.)   In *Hills*
v. *Bank, supra,* the United States Supreme Court said:. "It
is a general rule that, when the tender of performance of an
act is necessary to the establishment of any right against
another party, this tender or offer to perform is waived or
becomes unnecessary when it is reasonably certain that the
offer will be refused,—that payment or performance will not
be accepted."

The sustaining of the special demurrer to that part of the
answer setting forth that the defendant had in said month of
January, after the removal of the telephone and the alleged
notice of termination of the contract, offered to put in a tele-
phone for the use of the plaintiff at his barn, presumably at
the same rates as agreed upon under the first contract, provided
that the plaintiff would pay the sum of $15 for the expense
of putting up poles, was error.   The record does not clearly
disclose the ground of the special demurrer, but we gather that
it was on the ground of want of substance as a defense.
Whether, if a motion to strike had been interposed on the
ground that the matter was evidence in mitigation inserted
in the answer, the motion should or should not have been
granted, we do not decide, as the question is not presented.
The offer as set out in the answer was not open to objection
as a defense.   Plaintiff's counsel takes the position that to
accept the offer would be a modification of the original con-
tract and a waiver of the alleged breach.   The offer, as it is
pleaded, is not a modification.   If it appeared on the trial to
be in fact in such terms as to state or reasonably imply a waiver
or modification, then, of course, it would not be incumbent
upon plaintiff to accept.   To accept telephone service from the
defendant, if service  was necessary to his business, and it
could not be obtained except from the defendant (the defendant
company having, as alleged in the complaint, a monopoly of
the telephone business in Helena), would not necessarily be
a waiver or a modification.

The authorities declaring it to be the law, long settled, that

it is the duty of the injured party, if in his power, to take reasonable measures by which his loss may be less aggravated, are legion.    In the case at bar the defendant offered to prove, as aforesaid herein, that by expenditure of $15 the plaintiff could have avoided the alleged loss of $1,900.    What was the duty of the plaintiff?    Should he have accepted the offer?    Mr. Sutherland in his excellent work on Damages (volume 1, p. 155), speaking of the duty of the injured party to reduce or prevent damages, says:    "A claimant of damages is bound to accept reasonable offers of the other party, or a third person, having direct reference to the subject of the loss, which would have the effect of reducing or preventing damage."

A contract having been broken by one party, the making of a new contract by the parties thereafter does not necessarily take away the right of action for damages for the breach of the first contract.    (14 Am. & Eng. Enc. Law (Ed. 1890) p. 797, Sec. 14, and cases cited.)

A foreman was discharged as incompetent to hold his position as foreman, but was by his late employer offered employment in the same general line of business at the same compensation, and the defendant, sued for damages for breach of contract, offered to prove the tender of new employment; in the case (*Squire* v. *Wright,* 1 Mo. App. 172) the court held that while, strictly, such an offer might not have been a full defense, still it was admissible in mitigation of damages; citing *Pond* v. *Wyman,* 15 Mo. 175.

The judgment and order appealed from are reversed, and the case remanded for a new trial.

*Reversed and remanded.*