CURTIS L. BROWN and HELEN M. BROWN, Husband and
Wife, Plaintiffs and Appellants, v. FIRST FEDERAL
SAVINGS AND LOAN ASSOCIATION OF GREAT
FALLS, a Corporation, Defendant and Respondent.

No. 11456.
Decided October 23, 1969.
460 P.2d 97.

Libra, Bolkovatz & Romine, A. L. Libra, Helena, argued for appellants.

Alexander, Kuenning & Hall, John C. Hall, Great Falls, argued, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an action brought for the breach of a contract. The court made findings of fact and conclusions of law in favor of the respondent, the First Federal Savings & Loan Association of Great Falls. A motion by the appellants, Curtis L. and Helen M. Brown, for an amendment to the findings and conclusions was denied and this appeal followed.

The appellants had purchased some unimproved lots in Helena in 1957 and later obtained plans for a proposed home. After finding that a contractor named Seely was constructing homes in the area, the appellants entered into an oral agreement with him to build their residence for $17,495 less certain credits. There was a long waiting list for direct Veterans Administration loans at the time and the Browns found that Helena banks were not equipped to handle VA guaranteed loans. Upon the suggestion of an acquaintance, the appellants went to the respondent association in Great Falls. Due to a number of delays on the part of Seely, the loan was not approved by the respondent until July 7, 1958. Before this, on June 25, the Browns entered into a written agreement with Seely. There were additional delays and the various documents closing the loan were not sent to Helena until September 9, 1958.

The construction loan agreement called for a payment by the appellants to respondent of $4,028.50 and a mortgage loan by the respondent of $13,500. In addition, the Browns made an advance of $123.50 to the respondent for VA appraisal fees and title insurance premiums.

On August 13 the Veterans Administration issued its First Compliance Inspection Report showing satisfactory work through the first stage of construction. Under the loan agree-

ment this report entitled Seely to a distribution of $2,600 upon receipt of other papers required by the respondent. On September 19, Seely delivered an affidavit to the respondent stating there were no unpaid bills other than a lumber bill of about $720. The respondent association transmitted the $2,600 to Seely on October 2, 1958 without requiring that waivers of priority of lien forms be signed and returned.

Thereafter the Browns experienced difficulty with Seely. The respondent received the VA's Second Compliance Inspection Report after November 19, and on November 25, respondent wrote Seely that he would be entitled to a second disbursement when he sent in an affidavit listing all unpaid bills and when the lien waivers had been signed and returned. Around December 1, 1958 the appellants discovered that Seely was in financial trouble and Seely stated definitely the Browns would would not be in their home by Christmas as originally agreed upon. The appellants requested that the respondent make no more payments to Seely and the respondent asked the Browns to get a list of unpaid bills.

In the period before December 8, the Browns contemplated changing contractors. It was learned the original affidavit was in fact false, there being some $2,000 in unpaid bills as of September 19. Although demands were made neither the second affidavit nor the lien waiver forms were ever returned. The Browns ascertained that as of December 11, there were outstanding bills in the amount of $6,256.37.

On December 9, the respondent wrote Seely to have all bills paid and evidence of payment returned by December 12 and further, to do no more work on the project until so directed. No one in this action saw Seely again or in any way heard from him although both parties attempted to communicate with him.

Before December 16, the respondent requested the Browns to get an estimate on completion of the home from L. P. Barney, a Helena contractor. The Browns decided upon competitive bidding and informed the respondent. The president of respond-

ent association, P. C. Bulen, came to Helena and met with the Browns, their attorney, and representatives from the three bidders. Following Mr. Bulen's visit the Browns wrote respondent that their attorney was straightening things out for them and they had not yet selected a new contractor.

The respondent and the appellants agreed that the first mortgage payment due on January 1, 1959 would be extended and the Browns need only make payment upon the principal. Mrs. Brown sent a check for $16.99, principal payment on January 2, but the second payment due February 1, 1959 was not paid. The Browns, upon their request, received a balance sheet from the respondent during this period.

A letter was also sent by the respondent to the Browns suggesting the possibility of a conventional loan, but no reply was received. On December 26, Mr. Bulen again came to Helena and saw Mr. Brown and his attorney but obtained no information relating to financing the project, retaining or terminating Seely, or employing a new contractor.

On February 5, 1959 the respondent wrote to the Browns sending the mortgage, a release of mortgage, various other papers and a check for $1,988.93. The check was presented and paid and the release of the mortgage was recorded. Some four and a half years later this action was commenced.

The issues presented for review are: (1) Whether the respondent breached the contract; (2) Whether the respondent had the right to cancel the contract and (3) Whether the respondent breached a fiduciary obligation giving rise to a cause of action.

The appellants assert the respondent breached the construction loan agreement in four ways: (a) by not requiring lien waivers before the first disbursement; (b) by not exercising due care in the disbursement; (c) by not maintaining sufficient funds for the completion of the contract; and (d) by canceling the contract.

First of all, the original agreement between the Browns and Seely does not require any sort of lien waivers. The construction

loan agreement, in setting out the disbursement schedule, provides:

"Course of Construction disbursements are to be made in the following amounts at the times noted, upon furnishing of Waivers of Priority of Lien Rights and Final Lien Waivers as required by lender."

The appellants contend that the waivers of priority were a condition to payment and the phrase "as required by the lender" refers to the type of waivers to be furnished so that an ambiguity is created; and therefore, this ambiguity should be resolved against the respondent. When a matter in a contract is left to the determination of one party alone, that party's determination is conclusive if he acts in good faith. McCrimmon v. Murray, 43 Mont. 457, 469, 117 P. 73; Waite v. Shoemaker & Co., 50 Mont. 264, 287, 146 P. 736. Furthermore, any dispute as to the meaning of the phrase was resolved by the district court's finding that the matter of requiring waivers of priority is left to the respondent's discretion and is not a condition to payment.

On July 1, the respondent wrote the appellants that the waivers of priority would not be required until the second disbursement; when the papers were sent for signature the respondent asked that the waivers be signed before the first disbursement; but on September 18 the respondent again told the appellants that the waivers need not be signed until a later time. The appellants knew in advance that the first disbursement was going to be made, yet made no objection.

In addition, the waivers in question were waivers of priority of lien rights which do no more than subordinate the lien claims to the mortgage. The liens are still a charge upon the property. The appellants' burden would be exactly the same with or without the waivers. For this reason the alleged breach could not result in damages to appellants as against the respondent. The damages must flow from the acts of the person

causing them. Rigney v. Swingley, 112 Mont. 104, 110, 113 P.2d 344.

Secondly, the contention that the respondent did not exercise due care in the disbursement to Seely received no discussion at all by the appellants. Only one disbursement was made, and this was on the basis of a compliance report showing satisfactory work and the affidavit stating all bills but one were paid. No one has attacked the compliance report, and while the affidavit was false, no one other than Seely knew this at the time. The false affidavit constitutes perjury, and

"* * * no recovery can be allowed for an injury which resulted from the criminal act of a third person, although there existed at the time a condition which made the act possible or less difficult to accomplish, and which was produced by the negligence of the defendant." Lencioni v. Long, 139 Mont. 135, 361 P.2d 455, 457 (1961).

. The result complained of was not the result of the respondent's payment, but the result of Seely's affidavit and his failure to use the money to pay the bills. There is no reason to assume that had the respondent insisted upon lien waivers, the waivers would have been any more correct than the affidavit. Presumably, the only waiver forthcoming would have been from the lumber company and that merely subordinating the lien.

 Third, the appellants contend that the respondent breached the contract by not maintaining sufficient funds for completion of the contract. Again the appellants do not discuss this claim. At no time did the outstanding claims exceed the amount that would have been disbursed had Seely obtained the necessary waivers and affidavit for a second disbursement. Since all that had to be paid Seely was $17,495 less certain credits, there were sufficient funds to make payments under his contract.

Fourth, the appellants contend that the respondent breached the contract by cancellation. The only provision in the construc-

tion loan agreement providing for a cancellation of the loan states:

"[T]he Association may refuse to proceed with this loan if, in its opinion, the Owner and Contractor have not substantially complied with the provisions of this Agreement with the exception of Sections 2a and 7a of same within 30 days after date."

The appellants argue this is the exclusive method of cancellation. As early as Mr. Bulen's visit to Helena on December 16, the evidence clearly shows that both parties agreed the existing agreement had to be terminated and at least a novation entered into with a new contractor. Actual termination came only after respondent had attempted to talk with the Browns in late January and after consultation with counsel.

The rescission would not be effective until notice was given and the Browns agree that notice of rescission was given February 5. Over and above the matter of rescission, there remains the fact that a plaintiff in an action upon a contract has the burden of proving he complied with the obligations assumed by him, and if he fails this burden, his cause of action is destroyed. Chealey v. Purdy, 54 Mont. 489, 492, 493, 171 P. 926. The appellants had the obligation, in good faith and within a reasonable time, to decide whether they wanted to continue with Seely or arrive at a novation. They did nothing. Appellants equate the right given in the loan agreement to terminate with the general right given for termination for breach of the other party, but the law does not recognize such equation. The loan agreement, contrary to the appellants' assertion, did not give an exclusive method of cancellation. It gave no method whatever, but merely allowed the respondent to refuse to go through with the loan itself. Cancellation thereafter was left to the general rules of law.

The rule is as stated by 17A C.J.S. Contracts § 459, pp. 594, 595:

"The general rule is that, where a person by his contract charges himself with an obligation possible and lawful to be per-

formed, he must perform it. However, the performance of promises or conditions agreed on by the parties may be excused for reasons which the law deems just, such as where performance is rendered impossible by * * * the other party.''

The evidence shows appellants had not performed all of the terms of the agreement as of the date of rescission and far from having no control over the construction of the residence and disbursement of funds, at the least the following is true: Mrs. Brown was taking an active hand in seeing that the contractor did his job and had certain work redone; Mrs. Brown directed the respondent to make no more payments to Seely; the Browns were to select a new contractor.

Further, it was clear to both parties that Seely would not finish by Christmas, was not paying bills, and was no longer available for consultation.

''* * * If one party to a contract makes it impossible for the other party to perform the contract or delays the performance of it, the party who thus makes performance impossible on the part of the other, can not treat the default of the adversary party, which is thus caused, as discharging him from liability.'' Smith v. Gunniss, 115 Mont. 362, 383, 144 P.2d 186, 192.

Under section 13-903, R.C.M.1947, a party may rescind a contract when, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part; or if such consideration, before it is rendered to him, fails in a material respect, from any cause. There are two other reasons why the cancellation should be upheld: the appellants, by paying a discount contrary to VA regulations, defeated the guarantee of the loan by the Veterans Administration and the appellants consented to the rescission at the time.

''There can be no question but what a contract may be mutually abandoned or modified by the parties at any stage of performance, and each of the parties released from further obligation on account thereof; that it may be accomplished by parole, and the fact of its having been done established by evidence of

the acts and declarations of the parties." Kester v. Nelson, 92 Mont. 69, 74, 10 P.2d 379, 380 (1932).

The appellants also contend respondent breached a fiduciary obligation which gave rise to a cause of action. This argument has no merit whatsoever. Even assuming such a fiduciary relationship existed, the question still remains whether any duty owed by the respondent to the Browns was breached. It cannot be contended that the respondent reaped any benefit or profit from this transaction. Its "profit" would have been the interest paid to it on the loan and none ever was paid. The appellants also do not contend that the loan agreement was obtained by any undue influence. During the events in December, the appellants had an attorney.

There exists an additional issue in this case not raised by the appellants. Did they prove any damages? They claim $2,600, based on the amount the respondent disbursed to Seely; but the house was partially completed and the work was satisfactory. The appellants themselves obtained the benefits of a part of disbursement, yet offered no evidence as to the difference between the amount disbursed and the value of the work done. Moreover, appellants had the obligation of showing what portion of the loss, if any, was due to the fault of respondent. Smith v. Billings Sugar Co., 37 Mont. 128, 136, 94 P. 839, 15 L.R.A.,N.S. 837; Emerman v. Baldwin, 186 Pa. Super. 561, 142 A.2d 440. While exact proof of damage is not necessary there must be some evidence from which the amount may be determined. McFarland v. Welch, 48 Mont. 196, 198, 136 P. 394.

The Browns' injury was not the result of respondent's making a disbursement. Seely's breach cannot be imputed to the respondent, and the damages do not directly flow from the act of respondent. Furthermore, the appellants did not retain the low bidder to complete the house nor was there any explanation why it was not accepted. The evidence shows that the low bids included everything the retained contractor did, yet the difference in the bid price was $610.30. There can be no recov-

ery for damages which miight have been prevented by the reasonable efforts of the appellants. Ashley v. Rocky Mt. Bell T. Co., 25 Mont. 286, 294, 295, 64 P. 765.

The cause of the appellants' problems in this case was their contractor. The only inadvertent act by the respondent was not requiring waivers of priority of liens. But these waivers, in addition to being discretionary, have no effect upon the appellants' position. No breach of duty by respondent was established, and the appellants failed to prove their damages. The lower court found against them on major issues of fact. The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and HASWELL, and The Honorable THOMAS DIGNAN, District Judge sitting in place of MR. JUSTICE BONNER, concur.