No. 79-83

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

NEWTON MARVIN,

Plaintiff and Respondent,

vs.

C. LEO HARGRAVE,

Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
Daniel Johns argued, Kalispell, Montana

For Respondent:

Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
Kenneth O'Brien argued, Kalispell, Montana

---

Submitted:  September 12, 1980

Decided: OCT 22 1980

Filed: OCT 22 1980

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered by the Honorable Robert C. Sykes, Flathead County District Court, following a nonjury trial, awarding plaintiff Newton Marvin the sum of $3,736.24 pursuant to a land clearance contract.

Defendant C. Leo Hargrave and his wife entered into a written land clearing agreement with Bruce Kiser on August 16, 1974, for the purpose of converting approximately 100 acres of timberland into additional farmland. According to the agreement, Kiser was to cut "all timber, except aspen, and clear stumps and brush and pile same in as clear a manner as possible in return for all timber rights." The contract continued:

> "Large stumps will be tried, and if they
> can't be moved they may be left. Timber will
> be cut to the brow of the slopes for shelter
> belt, also shelter from A.M.C. Road. All
> slash disposal money will go to Bruce for
> clearing Harrding logging job--also slash
> from this job."

Kiser began clearing the land, but had cleared only a small portion of the 100 acres when, with the consent of Leo Hargrave on November 2, 1974, he assigned his interest in the contract to Newton Marvin. At the time of the assignment, Hargrave explained to Marvin that the land was being cleared so that it would be suitable for farming. For approximately two years, Marvin performed the contract as required, removing the timber and receiving the money from its sale.

Marvin ceased work in November 1977. By this time Marvin had cleared the property so as to comply with the terms of a State Fire Hazard Reduction Agreement which had been executed for the acreage by Hargrave with the Montana State Department of Natural Resources and Conservation

(DNRC) in accordance with the section 76-13-408, MCA. The requirements of this agreement having been met, DNRC informed Hargrave that the remaining slash disposal deposit being held under the agreement was no longer necessary and could be retrieved.

In accordance with the assigned contract, an initial slash deposit, released earlier by DNRC, was paid to Marvin by Hargrave. The payment was made during the two-year period Marvin worked on the land. The last slash deposit of $3,616.24 was returned in March 1978. However, instead of paying this sum to Marvin, Hargrave retained the money since he believed that Marvin had not fully performed under the contract.

In an attempt to secure the monies contained in the slash deposit, Marvin filed a claim and notice of a mechanic's lien on March 10, 1978. Marvin then filed suit on June 22, 1978, alleging that Hargrave had failed to pay him the slash disposal deposit in consideration for services performed in clearing the land. Marvin asked for $3,840.04 in damages, plus attorney fees, and that the property involved be sold and the proceeds applied to the judgment in accordance with the lien. Hargrave counterclaimed alleging that because of Marvin's failure to properly perform the contract he lost the use of the 100 acres as farmland for a period of three years and unless Marvin proceeds to properly complete the performance due, he will lose future use of the land. Hargrave stated his damages were as yet undetermined.

During trial Hargrave sought to introduce evidence showing certain expenditures he had made in completing the work allegedly left undone by Marvin. Marvin objected on the ground that the evidence was incompetent, irrelevant and

immaterial to any issue in the cause and that it was beyond the scope of any contention that Hargrave had set forth in the case. The trial court provisionally allowed the evidence to be introduced subject to Marvin's right to renew his objection at the completion of all testimony.

At the conclusion of the trial, Marvin by written motion renewed his objection to the evidence. The trial court granted the motion on the ground that the claimed expenses were outside the scope of the pleadings and the pretrial order and that defendant failed to present testimony at trial that a claim or bill for said expenses was ever presented to Marvin.

Judgment in favor of Marvin for $3,736.24 was entered on September 17, 1979. The judgment was based on the court's findings that Hargrave had wrongfully converted the slash disposal monies.

Following entry of judgment, Hargrave moved the court, in the alternative, to amend the findings; for judgment for the defendant; for a new trial; and for leave to amend the counterclaim so as to conform with the offered evidence pertaining to the expenditures made in completing the clearing of his land. Defendant's motions were denied, and amended findings were filed on October 9, 1979, again finding that Hargrave's actions constituted conversion. The court then ordered that each party have offsetting judgments against the other for $1,000 in attorney fees. Hargrave was allowed attorney fees pursuant to section 71-3-124, MCA, because Marvin had failed to establish his mechanic's lien. Hargrave appeals.

On appeal defendant raises the following issues:

1. Did the District Court err in striking all evidence pertaining to monies expended or about to be expended by defendant for clearing his land?

2. Did the District Court err by not permitting amendment of the counterclaim so as to meet the objection that the evidence pertaining to the expenditures was beyond the scope of the pleadings?

3. Did the District Court err by awarding attorney fees to plaintiff?

As to the first issue, we note that plaintiff brought this suit alleging that, although he had performed in accordance with the land clearing contract, defendant refused to release to plaintiff certain slash disposal monies due and owing as consideration. Defendant in response denied that plaintiff had fully performed under the contract and alleged, by way of a counterclaim, that because of this failure, defendant lost the use of his land as farmland for a period of at least three years.

The general rule is that where a person by his contract charges himself with an obligation, possible and lawful, to be performed, he must perform in accordance with the contract terms. Smith v. Zepp (1977), 173 Mont. 358, 567 P.2d 923; Brown v. First Federal Savings and Loan Association of Great Falls (1969), 154 Mont. 79, 460 P.2d 97; 17A C.J.S. Contracts, §459 at 594. It has also been stated that a valid defense to an action on a contract arises when the obligation to perform the act allegedly required was dependent on some other activity which the other party was to do, but failed to so perform (i.e., performance of a condition is precedent to the right of payment). See White v. Hulls, et al. (1921), 59 Mont. 98, 195 P. 850; 17A C.J.S. Contracts, §452 at 566.

-5-

In this instance defendant, in his answer to the complaint, denied that plaintiff fully performed under their contract. Defendant then alleged at trial that because of plaintiff's failure he was relieved of any contractual duty to release the slash disposal money to plaintiff as payment for services. With this being the case, defendant was entitled to present evidence in support of his position.

The issue now becomes whether the rejected evidence supports defendant's position as stated above.

The offered evidence deals with expenditures made by defendant in hiring others to complete the work allegedly left undone by plaintiff. Certainly, when a defendant is required to expend money to hire others to work in clearing land, which a plaintiff under contract was to clear as "clear as possible," this gives rise to an inference that plaintiff failed to fully perform under his contract. Such is the case here, and thus, the trial court should have allowed defendant to present evidence of the expenditures to support his denial of plaintiff's allegation that he (plaintiff) fully performed and was entitled to the slash disposal money.

It should be noted that this Court does not find that defendant's position as to nonperformance under the given contract is determinative in this case. We merely conclude that defendant should have been permitted to introduce the offered evidence in support of that defense. Nor do we find that the court's failure to admit the evidence constitutes reversible error. Defendant at trial was able to introduce evidence showing the condition of the land after plaintiff finished his work, as well as evidence that he hired others to finish work allegedly left undone by plaintiff. Defen-

dant was only denied the introduction of evidence indicating the expenses he incurred in hiring the outside parties. Consequently, in light of the evidence presented in support of defendant's position, the fact that he was unable to introduce evidence as to his expenses did not so prejudice defendant's case that a different result would have been reached had the evidence been allowed in.

In regard to defendant's contention that the District Court erred in not permitting him to amend his counterclaim, we acknowledge that even absent the amendment the offered evidence arguably should have been allowed to show damages as to defendant's claim that he lost the use of his land as farmland. However, because this evidence is not of the nature that to exclude it results in a different outcome and because the trial court found for plaintiff, thereby rejecting defendant's allegation of nonperformance as well as his counterclaim, we need not consider this issue further than to find there was no reversible error by the District Court.

As to the final issue on appeal, defendant merely asserts that because plaintiff did not fully perform pursuant to their contract, he was not entitled to prevail in this action, and thus, is not entitled to attorney fees. As already stated, defendant was able to present evidence in support of his defense of nonperformance and was not prejudiced at the trial court level in this regard. Having then concluded there was no reversible error at trial, and plaintiff having prevailed on a conversion claim, we cannot find the District Court erred in awarding him attorney fees.

The judgment of the District Court is hereby affirmed.

_____
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Daniel J. Shea_

_John C. Sheehy_
Justices