No. 90-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THE FEDERAL LAND BANK OF SPOKANE,
a corporation,

Plaintiff and Respondent,

v.

ROGER SNIDER and PENNY SNIDER,
husband and wife; ELMER SNIDER
and FLORENCE SNIDER, husband
and wife; UNITED STATES OF
AMERICA, acting through the
Farmers Home Administration;
WESTERN BANK OF CHINOOK, N.A.;
and INTERSTATE FEDERAL LAND
BANK ASSOCIATION, a corporation,

Defendants and Appellants,

and

FEDERAL INTERMEDIATE CREDIT
BANK OF SPOKANE, a Federal
corporation and FARM CREDIT SYSTEM
CAPITAL CORPORATION, a Federal
corporation,

Additional Parties Defendant
on Counterclaim.



FILED

MAR 21 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Seventeenth Judicial District,
In and For the County of Blaine
The Honorable John Warner, presiding.

COUNSEL OF RECORD:

For Appellants:

Leo Graybill, Jr., Graybill, Ostrem, Warner &
Crotty, Great Falls, Montana

For Respondents:

Kevin C. Meek, Alexander, Baucus & Linnell,
Great Falls, Montana

Justice Terry N. Trieweiler delivered the Opinion of the Court.

Plaintiff, the Federal Land Bank of Spokane, ("the Bank") commenced this suit in District Court to foreclose a mortgage on property owned by the defendants Roger and Penny Snider (Sniders). The Bank also sought a deficiency judgment for the difference between the amount due under a note executed by the Sniders and that amount recovered by the Bank at the foreclosure sale. Following trial before the Blaine County District Court in the Seventeenth Judicial District of Montana, without a jury, judgment was entered for the plaintiff awarding it the sum of $856,560.71, plus interest, attorney fees and costs. In addition, the judgment foreclosed defendants' mortgage and ordered that defendants' property, described in that mortgage be sold at foreclosure sale. Sniders were awarded possession of the mortgaged lands during the one-year statutory redemption period. However, they were ordered to pay rents or profits received or earned during the period of redemption to the person who purchased the property at the foreclosure sale. From that judgment, defendants appeal. We affirm in part and reverse in part.

Sniders raise the following issues on appeal:

1. Did the District Court err in refusing the defendants a trial by jury on their legal defenses?

2. Did the District Court err in concluding the plaintiff had no duty to reamortize defendants' loan under the facts proven at trial?

3. Did the District Court err in finding that defendants are "tenants" during the redemption period, and, therefore, liable for rents and profits to the purchaser at foreclosure?

## FACTUAL BACKGROUND

In 1974, Sniders purchased a 1,500-acre ranch north of Harlem from Mr. Snider's parents. They entered into a contract for deed pursuant to which annual payments were made to his parents.

Periodically, Sniders picked up additional pieces of agricultural land to combine with their original ranching operation.

In 1980, defendants learned that the Wilson Ranch, which consisted of 4,000 acres, was available for purchase. They decided that because of its proximity to their land it would fit in well with their existing operation and increase their income disproportionately to the increase in their expenses.

Defendants intended to purchase the Wilson property on contract but needed financing for the down payment. They sought that financing from the plaintiff through Federal Land Bank in Havre. They offered to secure the loan from the Bank by providing a mortgage on their home and original 1,500-acre ranch. In order

to give the Bank's mortgage priority, Mr. Snider's parents agreed to subordinate their interest as sellers on the contract for deed and the loan was increased sufficiently to pay off a previous loan to the Farm Home Administration which was secured by the same property.

On December 22, 1980, Sniders borrowed $487,000 from the Bank and signed a promissory note agreeing to repay the loan by making thirty-five annual payments in the amount of $52,736.14. An interest payment was due on January 1, 1981; however, the first full annual payment was not due until January 1, 1982. As security for repayment of the loan, Sniders mortgaged their original ranch to the Bank.

Defendants made the payments which were due in 1981, 1982, and 1983.

In 1984, the defendants' farm income was adversely affected by drought, grasshoppers and poor prices for their cattle. They were unable to make their 1984 loan payment when due. However, they qualified for a disaster loan from the Farm Home Administration in the amount of $85,200. From that amount, they used $63,306.76 to make their 1984 payment to the Bank on July 2, 1985.

Conditions did not improve in 1985. In addition, defendants' wheat crop was poor, and the income that was realized from the wheat crop had to be paid to the Western Bank in Chinook to repay a portion of the operating loan that that bank had extended.

4

Defendants were unable to make their 1985 payment. They requested that the Bank reamortize the payments due pursuant to their loan agreement. However, after analyzing the defendants' ability to repay a reamortized loan, the Bank declined to do so and notified Sniders that they would begin foreclosure proceedings on May 1, 1986, if the 1985 payment was not forthcoming prior to that date. Defendants did not make the 1985 payment. Neither have they made payments for 1986, 1987, 1988, 1989, or 1990. As a result, this action was commenced on November 22, 1986, and judgment was entered for the plaintiff as set forth above on June 6, 1990.

In their contentions as set forth in the final pretrial order, Sniders denied that they were in default and raised the affirmative defense that their loan agreement with the Bank included unwritten terms which had been breached by the Bank.

At trial, Sniders testified that prior to entering into the loan agreement with the Bank, they became concerned about their ability to make payments during a "disaster year." They communicated that concern to Jerome Daly, the manager of the Bank in Havre, and testified that he reassured them that in the event of a "disaster year" they could reamortize their payments. Their understanding of reamortization was that they could either pay the delinquent payment at the end of the pay-back period or blend it into their other payments. Defendants testified that when they were unable to make payments in 1985 and 1986, they requested an

5

opportunity to reamortize their loan but, contrary to the Bank's earlier verbal assurances, they were denied the opportunity to do so. They testified that because of the Bank's refusal to do so, they were unable to use the amount borrowed from the Farm Home Administration in 1985 to expand their cattle herd and for that reason have been unable to make further payments on their loan since that date.

Jerome Daly acknowledged that reamortization was discussed prior to finalization of the Sniders' loan, but stated that he did not commit the Bank to reamortization at that time because he did not have the authority to do so. He furthermore testified that before reamortization could be agreed to, the Bank would have to re-evaluate a customer's financial situation to determine whether there was any reasonable prospect for making payments under a reamortized schedule. He stated that reamortization would have a net effect of increasing the annual payment due from the borrower.

Prior to trial the defendants took the position that their affirmative defense constituted a breach of contract claim and that they were entitled to a jury trial. The District Court concluded that this was an action to foreclose a mortgage which was equitable in nature, and that based on the defendants' contentions in the pretrial order there were no counterclaims. Defendants' jury demand was denied.

I

In asserting their right to have had their case tried before a jury, Sniders rely on this Court's decision in Gray v. City of Billings (1984), 213 Mont. 6, 689 P.2d 268. In Gray, we held that when a plaintiff combines a legal claim for breach of contract with an equitable action he is entitled to a jury trial of his legal claims. We also referred to authority from the United States Supreme Court which has held that the Seventh Amendment protects a defendant's right to jury trial on a legal counterclaim. Beacon Theatres, Inc. v. Westover (1959), 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988.

Plaintiff argues that this case does not involve a legal claim nor a legal counterclaim and that Gray does not apply to an affirmative defense.

We need not decide whether the Gray rationale applies in this case.

Before Sniders were entitled to a jury trial, there had to be issues of fact for a jury to decide. Under Montana law, juries decide only issues of fact. Section 25-7-103, MCA. The court decides issues of law. Section 25-7-102, MCA.

Whether or not there is sufficient evidence to raise an issue of fact is a question of law for the court and is not an issue of fact. Mang v. Eliasson (1969), 153 Mont. 431, 458 P.2d 777, and Flansberg v. Montana Power Co. (1969), 154 Mont. 53, 460 P.2d 263.

That standard is the same for an appellate court as it is for the trial court. Rhoades v. DeRosier (Wash. App. 1976), 546 P.2d 930, 932.

> . . . The right of jury trial on any issue of fact presented by the pleadings is provisional, and if the evidence fails to form such issue of fact, the right of jury trial disappears.

Loucks v. Albuquerque National Bank (N.M. 1966), 418 P.2d 191, 194.

As we stated in Smith v. Polish (1967), 150 Mont. 340, 349, 435 P.2d 776, 780:

> . . . Whether there is any substantial evidence in the case made by party upon whom the burden rests is always a question of law.
>
> While the fact situation differs here from the case of West v. Wilson, 90 Mont. 522, 4 P.2d 469, the principle here controlling is set down in citing Chief Justice Brantly's opinion in Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P. 458. The principle is the same: "The old rule that a case must go to the jury if there is a scintilla of evidence has been almost everywhere exploded. There is no object in permitting a jury to find a verdict which a court would set aside as often as found. The better and improved rule is, not to see whether there is any evidence, a scintilla, a crumb, dust on the scales, but whether there is any upon which a jury can, in any justifiable view, find for the party producing it, upon whom the burden of proof is imposed." [Connor v. Giles, 76 Me. 132.]
> . . .

In this case we hold as a matter of law that Sniders presented insufficient evidence to have submitted the issue raised by their affirmative defense to a jury and that they were, therefore, not

8

prejudiced by the District Court's refusal to grant their request for a jury trial.

In order to prevail in their claim that the Bank breached its verbal agreement to reamortize, it was necessary that Sniders prove that they would have been in a position to perform their part of such an agreement and that they were damaged by the Bank's refusal to do so. Brown v. First Federal Savings & Loan Association of Great Falls (1969), 154 Mont. 79, 84-89, 460 P.2d 97, 100-102. In this case, Sniders offered no substantial evidence that they would have been capable of making further loan payments if allowed to reamortize. All of the evidence was to the contrary. Therefore, defendants sustained no damage by the Bank's refusal to do so.

Sniders' ability to repay the loan according to its original terms was questionable at best. The projection for being able to do so was based upon 1977 and 1979 calf and grain prices which had declined since those years. Even at those higher prices, the loan appraisal only provided Sniders with $729 of discretionary money at the end of each year.

Subsequent to the time that loan was entered into, Sniders' income from the ranching operation declined and they incurred substantial additional debt which had to be serviced from less income.

Thomas Wolfe testified that he became manager of the Federal Land Bank Association in Havre in 1985 and met with Sniders in 1986

to discuss their delinquent loan payment. In an effort to try to resolve their default, he did an analysis of their ability to restructure their debt and reamortize their loan at the Bank. That analysis was offered as an exhibit at the time of trial and was uncontradicted. It established that subsequent to December of 1980 Sniders incurred several hundred thousand dollars of additional debt and that the payments necessary to service that debt on an annual basis resulted in a $101,000 operating deficit for the Sniders in 1986. Based upon the need to carry over debt from 1986 to future years because of the Sniders' inability to pay those debts in a timely manner, the operating deficit was projected to substantially increase on an annual basis. Both plaintiff and defendants agreed that reamortization would result in higher, not lower, annual payments. The uncontroverted evidence was that in 1985 and 1986 Sniders had no ability to make their original payments. There was no prospect for improvement in their financial situation, and they had even less ability to make larger payments in the future. They were not in a position to take advantage of reamortization had it been offered. Therefore, they sustained no damage by the Bank's refusal to reamortize their loan. Their affirmative defense fails as a matter of law and they were not entitled to a jury trial on that issue.

## II

For the reasons set forth in the preceding paragraphs, we also conclude that the District Court did not err in finding that the Bank had no duty to reamortize defendants' loan under the facts proved at trial.

## III

This case was tried before the District Court on February 12, 1990. The court's original Findings of Fact and Conclusions of Law were entered on April 16, 1990. On May 10, 1990, the court entered additional Findings and Conclusions, including Conclusion of Law No. 6 which was as follows:

> The purchaser at the foreclosure sale ordered herein is entitled to receive from the mortgagors, the Sniders, the rents and profits from the mortgaged land during the period of redemption. Any amount received by plaintiff shall be a credit upon the amount required to redeem the property. Section 25-13-822(1), MCA; Citizens' National Bank v. Western L. & B. Co., 64 Mont. 40, 47 (1922). Such purchaser may demand an accounting of said rents and profits as provided by § 25-13-822(2), MCA.

On appeal, Sniders argue that as the judgment debtor they are entitled to possession of the property on which they reside pursuant to § 71-1-229, MCA, and that the issue of "rents and profits" only arises when some third person or a true tenant is in possession of the property which has been foreclosed upon. We agree.

11

Title 71, Chapter 1, of the Montana Code Annotated sets forth the rights and obligations of debtors and creditors involved in the mortgaging of real estate in Montana. Section 71-1-229, MCA, provides in relevant part as follows:

> The purchaser of lands at mortgage foreclosure is not entitled to the possession thereof as against the execution debtor during the period of redemption allowed by law while the execution debtor personally occupies the land as a home for himself and his family. . . . The intention hereof is to insure to such owner the possession of his land prior to foreclosure and during the year of redemption.

Chapter 13 of Title 25 of the Montana Code Annotated provides for the execution of judgments. Section 25-13-821, MCA, provides a debtor who personally occupies the land as a home with rights of possession identical to those provided for in § 71-1-229, MCA.

Section 25-13-822, MCA, then provides that:

> (1) The purchaser, from the time of the sale until a redemption, and a redemptioner, from the time of his redemption until another redemption, are entitled to receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof. . . .

In arriving at its conclusion that a judgment debtor who occupies the premises as a home for himself and his family is a "tenant in possession" pursuant to § 25-13-822(1), MCA, the District Court relied on this Court's decision in Citizens' National Bank v. Western L. & B. Co. (1922), 64 Mont. 40, 208 P. 893. In <u>Citizens' National Bank</u>, the defendant Western Loan

foreclosed on certain property located in Hardin. The sheriff's sale occurred on June 4, 1917. After receiving its certificate of sale from the sheriff, the loan company agreed to sell the property to Mrs. A. Becker on a contract. She took possession of the property on July 23, 1917, and thereafter received rents and profits from the property.

Pursuant to foreclosure of a second mortgage, the plaintiff Citizens' National Bank subsequently received a sheriff's certificate pursuant to which it redeemed the property from the first sale. It then demanded from the defendant all rents and profits received subsequent to the original foreclosure.

Under those circumstances, this Court found that Mrs. Becker was a "tenant in possession." However, that case is distinguished from this case for two reasons: First, Mrs. Becker was not the execution debtor and did not personally occupy the premises as a home for herself; and, second, the case was decided on the basis of the law as it existed prior to 1921. Sections 25-13-821, MCA, and 71-1-229, MCA, which guarantee the judgment debtor the right to possess land he and his family personally occupy as a home were not enacted until 1921 and were not applicable to the facts in Citizens' National Bank.

In this case the evidence showed that Sniders did occupy the land which was foreclosed on as their home. To require that they pay rent or profits from the land detracts from their unqualified

13

statutory right to possession in a way that was not provided for by the legislature. The sections quoted above provide for an unqualified right to possession. To charge rent for that possession diminishes that right without any statutory basis for doing so.

The plaintiff suggests that if this Court should find that Sniders are entitled to possession of the property foreclosed upon without the payment of rent then this Court should construe § 71-1-229, MCA, to pertain only to that portion of the property on which the defendants reside. In other words, that portion that defendants specifically occupy as a home should be separated from the rest of the 1,500-acre ranch for purposes of possession.

Plaintiff's position for purposes of collecting rent is different from the position it took when it filed its complaint. Paragraph 11 of the complaint states that the premises foreclosed upon have at all times been used as one lot or parcel; every part of it is necessary for the best use of the property, and, it cannot be sold in separate parcels without material injury.

Section 71-1-229, MCA, makes no provision for subdividing lands that the execution debtor occupies and we decline to add such a provision by judicial decision.

Based on the foregoing discussion, we affirm that portion of the District Court's judgment foreclosing the Sniders' mortgage in favor of the plaintiff and reverse that portion which required that

14

defendants pay rent or income to the plaintiff during the one-year period of redemption.

This case is remanded to the District Court for entry of judgment consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices