LANTERMAN *v.* WILSON ET UX.

[No. 149, September Term, 1975.]

*Decided April 7, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Charles Michael Tobin* for appellant.

*Elbert R. Shore, Jr.,* and *John T. Bell,* with whom were *Frank S. Cornelius* and *Bell & Cornelius* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

On June 28, 1972, Michael Wilson (Michael), then 19 years of age, and the son of Wayne and Beverly Wilson (the Wilsons), broke into the Montgomery County residence of John Lanterman during his absence, ransacked its contents and stole a number of valuable items of personal property. Lanterman sued both Michael and his parents in the Circuit Court for Montgomery County to recover damages which he sustained as a result of the burglary. In one count of his declaration, Lanterman charged that the Wilsons were legally responsible for Michael's conduct in committing the burglary; the count alleged that the Wilsons had prior knowledge that Michael had repeatedly committed wanton and wilful acts of a similar nature which indicated his

"dangerous tendencies and mischievous disposition" and that by failing to control their minor son, the Wilsons "acquiesced" in the burglary and failed in their duty "to prevent or provide medical attention to . . . [Michael] which would have averted the injury and damage done . . . ."

At the trial, Lanterman adduced evidence showing that six weeks prior to the burglary, Michael had been released on probation from the Montgomery County Detention Center; that while he had not lived with his parents for more than six or seven weeks in the preceding year and a half, he was at the time of the burglary living at home and was supported by his parents; and that Mr. Wilson acknowledged that he could control his son and had subjected him to the "rules" of the Wilson home.

Lanterman adduced evidence showing that Michael, in company with another youth, went to the Lanterman home in the early morning hours of June 28, 1972, gained entrance by breaking a window and over a period of several hours entered every room in the house, ransacking drawers and a cabinet, and stole a number of items of valuable personal property, including a stereo music system, a large quantity of liquor, and a variety of guns, knives, and swords. There was evidence showing that the Lanterman residence was approximately four blocks from the Wilson home and that Michael utilized the Wilson family automobile in carrying the stolen property away.

Other evidence adduced by Lanterman at the trial showed that prior to the burglary, Mrs. Wilson acknowledged to Mrs. Lanterman that Michael was "sick" and needed help and that although she had repeatedly so told her husband, he disagreed with her. There was testimony from a psychiatrist, Dr. Irving Berman, who examined Michael three years after the burglary for the purpose of testifying at the trial on Lanterman's behalf, that Michael had suffered from a passive aggressive personality disorder at least since the age of 15; that the condition first manifested itself when Michael "started hooking school and running

away from home"; and that the condition was then clinically treatable.

Lanterman sought to elicit other testimony from the psychiatrist to prove that Michael's condition could have been alleviated by treatment; that there was a direct causal relationship between Michael's untreated personality disorder and the Lanterman burglary; that had Michael been given psychiatric treatment, the burglary would not have occurred; that Michael was of the impression that his parents induced or approved of his conduct; that Michael would understand passivity from his parents to constitute approval of his continuing antisocial conduct; that Michael's conduct would have been different had he been subjected to psychotherapy; and that the Wilsons should have been able to foresee, in the absence of treatment, a continuation of Michael's mischievous behavior.

The trial court (Mathias, J.) sustained objections to this line of inquiry; it ruled that only evidence that tended to show either that the Wilsons "induced or approved the act of burglary or that their son was acting as their servant and agent at the commission of the act of burglary" would be admissible in evidence to establish the Wilsons' liability for Michael's act. The court also ruled that the psychiatrist's proffered testimony with respect to the impression Michael communicated to him at the time of his examination, namely, that his parents approved or induced his conduct, was, as to the Wilsons, inadmissible hearsay. Dr. Berman was nevertheless permitted to answer the direct question whether Michael actually told him that his parents induced him to commit the burglary; he said:

> ". . . If parents take things lightly, then the things he does is antisocial. I think very often a child takes the view that this is all right to do, but that is on a conscious level. They would repeat that sort of thing."

The trial court also excluded from evidence testimony proffered by Lanterman to show that the Wilsons had received notice from Michael's schools that he had

performed poorly in both conduct and in his studies; that he was often truant and had to be transferred from one school to another; that the Wilsons knew, prior to the Lanterman burglary, that Michael had been charged with shoplifting and receiving stolen goods, had been convicted of being a rogue and vagabond, and was charged with violating probation; that Mrs. Wilson was unaware that Michael was living at home when the Lanterman incident occurred; and that Mr. Wilson had a master's degree in psychiatric social work.

At the conclusion of Lanterman's case, the trial court granted the Wilsons' motion for a directed verdict and this appeal followed.[1] We granted certiorari prior to argument in the Court of Special Appeals. Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-203.

It is a well-recognized principle of the common law, firmly established in Maryland, that a parent is not ordinarily responsible for the wrongful act of his minor child, and that to charge the parent with such responsibility, it must be shown that he induced or approved of the act, or that the child's relationship to the parent at the time was that of servant or agent. *Kerrigan v. Carroll*, 168 Md. 682, 179 A. 53 (1935); *Whitelock v. Dennis*, 139 Md. 557, 116 A. 68 (1921); *Matter of Sorrell*, 20 Md. App. 179, 315 A. 2d 110 (1974). Cases applying the common law principle are collected in an extensive annotation appearing in 54 A.L.R.3d 974 (1974).

Lanterman contends that the trial court took too narrow a view of Maryland law in limiting parental liability for intentional torts committed by a minor child to instances of inducement, approval, or agency. He urges that we look with favor upon those cases, collected at 54 A.L.R.3d, at 992-1001, holding that a parent may be liable for the consequences of a failure to exercise the power of control which he has over his minor child where he knows, or in the exercise of due care, should have known that injury to another was a probable consequence of such failure and the parent had knowledge of the vicious or destructive tendencies of the child but failed to

---

1. No appeal was taken from a judgment entered against Michael.

exercise reasonable measures to control him. Lanterman suggests that we follow the lead of the Arizona Court in *Parsons v. Smithey*, 109 Ariz. 49, 504 P. 2d 1272 (1973), and adopt the rule set forth in Restatement, Second, Torts § 316 (1965), which provides:

> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> "(a) knows or has reason to know that he has the ability to control his child, and
>
> "(b) knows or should know of the necessity and opportunity for exercising such control."

Lanterman contends that in *Rounds v. Phillips*, 168 Md. 120, 177 A. 174 (1935), our predecessors recognized that parental liability for tortious acts of minor children may be based on grounds other than approval or inducement, specifically, on negligence in the care and control of one's minor child. Lanterman argues that the Wilsons had the authority and duty to control Michael, but nevertheless permitted him to remain out at night and to use the family car, which assisted him in the commission of the Lanterman burglary; that they had a duty to restrict his activities "in the interest of the public safety"; and that because they knowingly failed to provide Michael with needed medical care, they are liable in damages to Lanterman, a third party injured as a direct and foreseeable result of their negligence.

The *Rounds* case was decided four months prior to *Kerrigan;* it involved a suit against the parents of a minor son who injured the plaintiff while negligently driving his mother's automobile. The evidence showed that the parents knew that their son was a reckless driver and had once had his license revoked for driving while intoxicated. The plaintiff asserted a cause of action against the parents based upon their primary negligence in allowing their habitually reckless son to operate the mother's automobile. The Court held that there was legally sufficient evidence of the

negligence of the parents to justify submission of the case to the jury; it did so, not on the ground that negligence in controlling one's minor child creates parental liability for the child's tortious act, but rather on the principle set forth in the Restatement of Torts, § 260, that "[o]ne who supplies . . . a chattel for the use of another whom the supplier knows or . . . should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them." *Rounds* concerns itself with the doctrine of negligent entrustment, its gist being that one who supplies a chattel to another knowing that it will likely be used in a dangerous fashion is subject to liability for injuries proximately caused thereby. *See Curley v. General Valet Service*, 270 Md. 248, 311 A. 2d 231 (1973). *Rounds* does not, therefore, stand for the proposition that parental liability may be based on negligence in the control of one's minor child.

In *Parsons v. Smithey, supra,* also relied upon by Lanterman, the defendants' 14-year-old son forced his way into a woman's bedroom, began beating her over the head with a hammer, told her to "take off her clothes and lay down on the floor," and assaulted her with a knife and a belt buckle. The evidence revealed that two years earlier, the boy had asked a strange woman in the street to take off her clothes and, when she refused to do so, threatened to throw rocks at her. There was other evidence that the boy once forced his way into a classmate's home and shoved her around. The evidence disclosed that the parents knew of these and other minor incidents at school, and were advised by school authorities on at least three occasions that their son was in need of professional psychiatric treatment. Holding that the trial court did not err in directing a verdict for the defendants on the issue of parental liability, the Court, citing the Restatement, Second, Torts § 316, emphasized that for parents to be liable for failure to control their children, they must have knowledge of "prior acts

which are the same or similar to the act complained of." 504 P. 2d at 1276. Under no view of the evidence, the Arizona Court held, was it proper to find that the parents should have reasonably foreseen that their son had a disposition to perform such a violent act; it stated that to hold that the parents should have foreseen that the boy would commit such an assault would "stretch the concept of foreseeability beyond permissible limits." 504 P. 2d at 1277.

We see no reason in this case to depart from the common law rule announced in *Kerrigan* and *Whitelock* that parental liability for intentional torts of minor children is ordinarily limited to instances of inducement, approval, or agency.[2] As so succinctly pointed out in Prosser, *The Law of Torts*, § 123, at 873 (4th ed. 1971), negligence in controlling one's child should not, of itself, be reason to find parental liability, as it "would be extending the hardships of harassed and exasperated parents too far to hold them liable for general incorrigibility, a bad education and upbringing, or the fact that the child turns out to have a nasty disposition."

We find no merit in Lanterman's contention that the trial court erred in refusing to permit Dr. Berman to testify concerning Michael's state of mind, *i.e.*, that Michael perceived that his parents approved his life style and conduct. Neither Michael's state of mind or his perception of his parents' approval of his conduct and life style would be relevant evidence to establish that the parents had, in fact, induced or approved the conduct which resulted in the Lanterman burglary.

Nor is there merit in Lanterman's argument that the trial court erred in sustaining objections to questions asked the

---

**2.** Forty-six states have enacted statutes imposing strict vicarious liability upon parents for damages caused by wilful misconduct of their infant children. *See* Matter of Sorrell, *supra* (20 Md. App. at 185-86). Code, § 3-839 of the Courts Article (formerly Art. 26, § 71A), entitled "Liability [of parents] for acts of child," authorizes entry of a judgment (not exceeding $1,000.00) against a parent "[i]n any juvenile cause" in favor of a wronged person "for acts of willful or malicious destruction or theft of any property owned by the wronged person, or any medical expenses incurred by an injured person willfully or maliciously caused or committed by the child of that parent who is under 18 years of age." At the time of the burglary, Michael was 19 and not within the jurisdiction of the juvenile court.

psychiatrist to prove a causal connection between the alleged failure of the Wilsons to treat Michael and the Lanterman burglary. The proffered testimony was properly excluded since it was not relevant to the issue whether the Wilsons had induced or approved of their son's misconduct or whether in committing the burglary, Michael was acting as their agent.

There being no legally sufficient evidence from which the jury could properly infer parental inducement or approval, or the existence of an agency relationship, the trial court was correct in granting the Wilsons' motion for a directed verdict.[3]

*Judgment affirmed; costs to be paid by the appellant.*

---

**3.** In 1972, when Michael committed the burglary, the age of majority was established by common law at 21 years. On July 1, 1973, the age of majority was declared to be 18 years. Code (1957, 1976 Repl. Vol.) Art. 1, § 24.