Anne Hunter Bell

V.

Littleton C. Hudgins, Sr., et al.

Record No. 831966

January 16, 1987

Present: All the Justices

*Robert John Haddad (Stephen C. Swain; Richard G. Brydges; Clark & Stant, P.C.*, on brief), for appellant.

*Lawrence H. Framme, III (Beverly Warner Snukals; Mezzullo, McCandlish & Framme*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

We awarded an appeal in this negligence case to consider the question whether, in the absence of a principal-agent relationship, parents may be liable for the malicious, intentional acts of their minor child based on the independent negligence of the parents in failing to control the child. We have examined the issue and have concluded not to impose such liability.

Appellant Anne Hunter Bell was injured severely on February 2, 1981 in the City of Virginia Beach when she was attacked at her place of employment, the Mariner Hotel, by Littleton C. Hudgins, III, son of appellees Littleton C. Hudgins, Sr. and Dorothy T. Hudgins. Bell sued the assailant, his parents, and her employer, seeking recovery of compensatory and punitive damages. The trial court sustained a demurrer filed by the parents and we awarded the plaintiff this appeal.

In her motion for judgment, the plaintiff alleged that the assailant, who was 16 years of age and resided with his parents in their Virginia Beach home, had suffered "for a long period of time" from serious emotional problems, all of which were known to the parents. The plaintiff further asserted that "on frequent occasions these emotional problems manifested themselves in violence" on the part of the son, a fact "well known" to the parents. The plaintiff also alleged that, immediately prior to the date of the attack on her, the son had been involved "in certain illegal activities" on

her employer's premises, located near the home of the parents. She asserted that these "activities" involved violence and threats of violence which were "made known" to the parents.

The plaintiff alleged that the knowledge of such violent conduct should have put "anyone" on notice that the son "should be placed in an institution for safe keeping." Nevertheless, the plaintiff asserted, "the defendant parents failed to heed those warnings and clear indications of potential harm and allowed the child to remain free to move about the community at will." She asserted that the parents, in the exercise of reasonable care, should have "seen to his in house custodial treatment and care."

The plaintiff alleged that, as the result of the parents' negligent failure to prevent the son from being "at large" in the community, she was permanently injured when the son attempted to rape her and when he assaulted her with a knife while she was performing her duties as a desk clerk at the hotel.

In sustaining the demurrer, the trial court ruled that the plaintiff's claim did not state a cause of action. The court noted that "[i]f public policy demands a parent to be held liable in these circumstances, it should be accomplished by an appropriate act of the General Assembly and not by judicial pronouncement." We agree.

Virginia adheres to the general rule that, in the absence of a master-servant or principal-agent relationship, the fact of paternity alone does not impose liability on parents for the torts of their minor child. *Hackley* v. *Robey*, 170 Va. 55, 65, 195 S.E. 689, 693 (1938). But the plaintiff says she does not rely on a theory of vicarious tort liability in this case. Instead, the plaintiff contends that, under certain specified circumstances, parents are liable for their own negligence which results in injury or damage intentionally inflicted by their minor child to third parties. Pointing out that an "overwhelming majority" of jurisdictions impose such liability, *see* Annot., 54 A.L.R.3d 974, the plaintiff invites us to adopt the Restatement position. That rule provides

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 316.

We decline the plaintiff's invitation.

■■■ We are unwilling to establish in Virginia by judicial decree a blanket rule which would impose civil liability upon parents who fail to control their minor child's criminal behavior. *See Lanterman* v. *Wilson*, 277 Md. 364, 354 A.2d 432 (1976). The General Assembly already has legislated in this area, but stopped short of imposing the broad parental liability urged by the plaintiff.

Code § 8.01-44 provides as follows:

"The owner of any property may institute an action and recover from the parents, or either of them, of any minor living with such parents, or either of them, for damages suffered by reason of the willful or malicious destruction of, or damage to, such property by such minor. No more than $500 may be recovered from such parents, or either of them, as a result of any incident or occurrence on which such action is based. Any such recovery from the parent or parents of such minor shall not preclude full recovery from such minor except to the amount of the recovery from such parent or parents. The provisions of this statute shall be in addition to, and not in lieu of, any other law imposing upon a parent liability for the acts of his minor child."

We reject the plaintiff's argument that the language in the last sentence of the statute "speaks directly to the existence of the cause of action for which Bell now argues." This is a vicarious liability statute which imposes liability without a determination of the parents' independent negligence. The "additional" law mentioned in the last sentence refers to existing law based on vicarious liability, such as the liability of a parent based upon a principal-agent relationship. Similar statutes enacted in other states have been construed to focus primarily on prevention of juvenile delinquency, malicious mischief, and vandalism and, in view of the monetary limitation, to impose a penalty upon parents rather than

to afford compensation to the victim, the relief sought in this case. *See* Annot., 8 A.L.R.3d 612, 615, 624-25.

■ We believe that a decision whether to adopt a doctrine of parental neglect is more properly left to the legislature because of the many societal and policy considerations which necessarily bear upon such a decision. *See Williamson* v. *The Old Brogue, Inc.*, 232 Va. 350, 350 S.E.2d 621 (1986). As the trial court noted in sustaining the demurrer, many public policy issues arise from the suggestion that a parent who fails to institutionalize or severely curtail the activities of an emotionally disturbed minor child should be liable to third persons for the child's intentional torts. For example, should this concept of liability be applied to other family relationships? That is, should one spouse have the duty to control the conduct of an emotionally unstable spouse? Should the rule apply to other relationships, such as between physician and emotionally ill patient? Should the doctrine apply to all minor children regardless of age, even though parental control diminishes as the child matures? Should the rule apply to anyone standing *in loco parentis* to the emotionally disturbed child? Will there be an adverse effect upon the mental health care system, the judicial system, and traditional family relationships if such a rule is adopted? Answers to these and other policy questions generated by the rule advocated by the plaintiff should come from the General Assembly and not the courts.

■ Finally, *Crowell* v. *Duncan*, 145 Va. 489, 134 S.E. 576 (1926), relied on by the plaintiff, is inapposite. In that case, a plaintiff recovered damages from a father as the result of the negligence of defendant's *adult* son who, while intoxicated, drove the father's motor vehicle into the plaintiff. However, that case was tried on the theories of respondeat superior and negligent entrustment, concepts which are different from the theory relied upon in the present case.

Consequently, the judgment of the trial court will be

*Affirmed.*