## CIRCUIT COURT OF FREDERICK COUNTY

Ralph W. Poe

    v.

Donald R. Yanke

June 15, 1989

Case No. (Law) 88-30

By JUDGE ROBERT K. WOLTZ

This action appealed from the general district court is on a writing signed by the defendants[1] and delivered to the plaintiff concerning damage to the latter's personal property by the minor children of the former. Both parties have filed motion for summary judgment. Summary judgment is granted to the defendant.

The writing in issue is dated October 9, 1982, and provides:

> We each hereby acknowledge and accept responsibility for damages done by our two sons to the two antique fire trucks owned by Ralph W. Poe. The damages were done the night of October 8, at Candyhill Camp Ground in Winchester, Virginia, while we were camping there. All lights, windshields, and windows were broken by the boys. This involved a 1924 Seagraves and a 1946 Ford, both of which were vandalized. We hereby agree that we are responsible for our sons' actions and will pay for the damages in the event that

---

[1] One defendant was nonsuited pursuant to a covenant not to sue.

our respective insurance companies do not pay the claim. Settlement should be made within thirty days from the above date.

The plaintiff's position is that the writing is a valid contract under which the defendant is obligated by the promise he made in it. The defendant asserts that the writing is a mere promise unsupported by consideration as a consequence of which the defendant should be awarded summary judgment.

Resort to basic principles resolves this matter. Many promises are made under many circumstances, but only certain of them are legally enforceable. Though relaxed in certain instances by statute, the "inexorable common law rule" is that only those promises supported by consideration are enforceable. *Hogan v. Callas*, 139 Va. 137, 144 (1924). Morality not always being coincident with law, consideration, valuable and valid, is the great divide separating that class of promises for which the law will grant relief from those where relief is withheld. *See Southern Railway Co. v. Willcox*, 98 Va. 222, 224 (1900).

Consideration is defined in the alternative as "a detriment to the plaintiff [promise] or a benefit to the defendant [promisor]." 1 Williston on Contracts, page 369 (3d ed. 1957). It "is the exchange or price requested and received by the promisor for the promise." *Id.* at page 370. As stated in *Brewer v. Bank of Danville*, 202 Va. 807, 815 (1961):

> Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

The rule applicable in Virginia is that "the fact of paternity alone does not impose liability on parents for the torts of their minor children," except where a

special relationship such as principal-agent between parent and child may exist. *Bell v. Hudgins*, 232 Va. 491, 493 (1987). No such special relationship between parent and child being alleged here, the defendant, who had no common law legal obligation to pay for the damages caused by his child, did nothing more than promise to perform what would appear to be a moral obligation. Except for the possible easing of his conscience, he received nothing in return for his promise, or more accurately put, there was no detriment to the plaintiff. Consequently, the promise of the defendant is unsupported by consideration, and he is not liable on this basis.

Under certain circumstances, forbearance to sue will be good consideration. 4B Mich. Jur., *Contracts*, § 36. Though consideration may be implied, none can be from the four corners of this writing. The court cannot go dehors the instrument to speculate on the possibility of a forbearance by the plaintiff to sue nor, the document sued on being clear and unambiguous reasonable care in such operation." While this statute does not directly address the issue of sovereign immunity, plaintiff contends that the effect of the statute is to hold officers such as Officer Howard to the standard of reasonable care under the circumstances.

The statute relied upon by plaintiffs does not abrogate the law of governmental immunity, nor does it carve out a special exception to the law of immunity so as to hold operators of emergency vehicles owned by a governmental entity liable for their acts of simple negligence. The statute's purpose is to insulate emergency vehicle operators from the flurry of criminal traffic citations that would proliferate as a result of their driving maneuvers in the absence of such legislation. Though it may appear to set a standard of care applicable to drivers of emergency vehicles, it does not address the broader policy considerations embodied in the doctrine of governmental immunity, such as the need to encourage public service and protect the public purse from depletion for every error made by a governmental employee. In short, the statute's purpose, to exempt those like Officer Howard from criminal traffic citations, is not inconsistent with the purposes of governmental immunity. The issue of what standard a squad car driver should be held to on the open road is a far different

question from whether or not police officers performing concededly governmental functions should be held civilly liable in the first place. If Officer Howard had not been responding to a call but had been en route to get a cup of coffee, this would be a different case.

The issue is not how Officer Howard drove. Rather, the issue is whether or not Officer Howard should be afforded governmental immunity for acts of negligence performed while carrying out a governmental function. If Officer Howard had not been engaged in the performance of a governmental function, § 46.1-226 may have served to establish negligence *per se*.

In this instance, however, the court is persuaded that operation of a police vehicle in responding to a call for assistance dents of *Aguilar v. Texas,* 378 U.S. 108 (1964), found probable cause to believe on reliance on the sufficiency of the affidavit that criminal activity was afoot and the evidence of such activities would be found in the places alleged in the affidavit. The Motion to Suppress the evidence as fruits of an illegal search and illegal order is overruled. See *Aguilar*, see also, *Williams v. Commonwealth of Virginia*, ceable as a contract.