No. 92-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

J.L.,

    Plaintiff and Appellant,

    -vs-

JARET KIENENBERGER, a minor, and
RON and PATTI KIENENBERGER, his
parents, individually,

    Defendants and Respondents.

FILED

FEB 2 5 1993

*..t Smith*
C... ... OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John E. Seidlitz, Jr., Attorney at Law, Great Falls,
Montana

    For Respondents:

        Joseph M. Sullivan; Emmons and Sullivan, Great
Falls, Montana
Patrick F. Flaherty, Attorney at Law, Great Falls,
Montana

Submitted on Briefs:  November 24, 1992

Decided:  February 25, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eighth Judicial District, County of Cascade, the Honorable John M. McCarvel presiding. Appellant J.L. appeals from an order granting respondents Ron and Patti Kienenberger summary judgment and dismissing with prejudice her complaint against them. We affirm.

On January 19, 1991, Jaret Kienenberger, age 13, entered the home of J.L., age 28, and raped her. At the time he was under the influence of alcohol and marijuana. The incident took place at 11:50 p.m., while J.L. was sleeping on a couch in her living room. J.L. claimed damages for physical and psychological injuries resulting from the assault.

In the ensuing criminal proceedings, Jaret pled guilty to sexual intercourse without consent and was sent to the Yellowstone Treatment Center. J.L. then sued Jaret's parents on a theory of negligent supervision, alleging that the Kienenbergers owed a duty to her and to others to supervise their child appropriately, and that they had breached that duty by supervising his upbringing so negligently that "it was reasonably foreseeable that he would be a danger to himself and to third parties."

At the time of the rape, Ron and Patti Kienenberger had been separated for approximately two and one-half years. Jaret had been living alternately with Ron at the family's original home in Dodson, Montana, and with Patti at her home in Great Falls. He was living with Patti during the 1990-91 school year. Ron and Patti stated in their affidavits that before the fall of 1989 they had no

2

problem with Jaret, and Jaret had no problem in school or with law enforcement. His school records support these statements.

Between October 1989 and October 1990, Jaret was involved in three incidents of minor vandalism, all in Dodson. He and three other youths negligently started a fire after breaking into a storage building to smoke. Again with three other youths, he broke windows in a building and a windshield in a pickup truck. In October 1990, Jaret and three Dodson youths broke into a building and damaged a high school float. Ron Kienenberger stated in his affidavit that when law enforcement officials informed him of these incidents, he punished Jaret.

Patti Kienenberger stated in her affidavit that she was aware of two occasions during the fall of 1990 on which Jaret had been drinking alcohol, and that she grounded him on both occasions. On the night of Saturday, January 19, 1991, she gave Jaret permission to go to a friend's house to watch television. Instead he went elsewhere and drank alcohol and smoked marijuana. This was the night that he raped J.L.

The primary issue on appeal is whether Ron and Patti Kienenberger were entitled to summary judgment. J.L. presents six issues, but only four are relevant to the primary question. We restate them as follows:

1. Whether the District Court erred in determining that Ron and Patti Kienenberger had no duty to J.L. to supervise their minor child, Jaret, as a matter of law.

2. Whether the District Court erred in holding that even if the Kienenbergers had a duty to J.L., the record does not establish their negligence.

3. Whether the District Court abused its discretion in

3

denying J.L.'s request for an order to release Jaret's youth court records.

4. Whether the District Court abused its discretion in denying J.L.'s motion to continue the summary judgment hearing, based on incomplete discovery.

Our standard of review for a grant of summary judgment is the same as that initially applied by the trial court under Rule 56, M.R.Civ.P. Graham v. Montana State University (1988), 235 Mont. 284, 287, 767 P.2d 301, 303. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

The party moving for summary judgment has the initial burden of showing that there is no genuine issue as to any fact deemed material in light of the substantive principles that entitle the movant to judgment as a matter of law. Fleming v. Fleming Farms, Inc. (1986), 221 Mont. 237, 241, 717 P.2d 1103, 1105-1106. Whether or not there is sufficient evidence to raise an issue of fact is a question of law for the court, not a question of fact. Flansberg v. Montana Power Co. (1969), 154 Mont. 53, 60, 460 P.2d 263, 267; Federal Land Bank of Spokane v. Snider (1991), 247 Mont. 508, 513, 808 P.2d 475, 478.

Ordinarily, issues of negligence are not susceptible to summary judgment and are better determined at trial. Henderson v. Pocha (1990), 245 Mont. 217, 219, 799 P.2d 1095, 1097. To sustain a claim for relief based on negligence, however, a plaintiff must

4

prove both negligence and proximate cause. If there is no evidence of any negligent act or omission by defendant, summary judgment is properly granted. Scott v. Robson (1979), 182 Mont. 528, 536, 597 P.2d 1150, 1155; United States Fidelity and Guaranty Co. v. Camp (Mont. 1992), 831 P.2d 586, 589, 49 St.Rep. 372, 373-374.

I

To prevail in her negligence action, J.L. must prove the following elements: a duty owing from the Kienenbergers to herself; a breach of that duty; proximate causation; and damages. Scott, 597 P.2d at 1154. The District Court concluded correctly that J.L. failed to establish the first of these elements. As we affirm the District Court on this issue, we do not address breach of duty or the remaining elements of negligence.

J.L. argues that Montana law imposes a duty on parents to provide proper supervision of their children. She argues that § 27-1-701, MCA, makes a parent legally responsible for injuries to others occasioned by want of ordinary care in supervising his minor children. This statute, however, creates liability for "want of ordinary care or skill in the management of his property or person." We decline to extend this principle to the "management" of children.

J.L. also cites § 41-3-101, MCA, as evidence that parents have a moral and legal duty to provide for their children's physical, moral, and emotional well-being. As the Kienenbergers correctly point out, however, this statute describes a duty parents owe to their children, not to third parties.

5

The common-law rule, still followed in Montana, is that a parent is not liable for a child's tort, except under the limited circumstances provided in § 27-1-718(2), MCA (parent or guardian of a minor convicted of shoplifting is liable to the seller for the greater of $100 or the retail value of the goods, not to exceed $500), and § 40-6-237, MCA (a city, county, school district or state agency may recover up to $2,500 from the parent of a minor who willfully or maliciously destroys its property). Neither of these statutes applies here.

A parent also may be liable under the doctrine of respondeat superior, if the child is the parent's agent or employee.

> The basic principle of liability is agency, and the father cannot be . . . held responsible for the negligence of his minor son in the absence of proof of the existence of agency at the time of the accident.

Clawson v. Schroeder (1922), 63 Mont. 488, 495, 208 P. 924, 926. See also Castle v. Thisted (1961), 139 Mont. 328, 363 P.2d 724 (parent not liable for minor child's negligent driving because driving the car did not make the child the parent's agent). Here, no argument has been made that Jaret Kienenberger was in any sense his parents' agent or employee at the time of the assault.

J.L. urges this Court to adopt the doctrine of parental neglect, set forth in § 316 of the Restatement (Second) of Torts (1965) as an exception to the common-law rule that parents are not liable for their children's torts. We decline to do so.

Neither this Court nor the Montana legislature has found it necessary in the past to expand these limited exceptions to the common-law rule of nonliability, and we do not find it necessary

6

now. The District Court concluded correctly that Ron and Patti Kienenberger owed no duty to J.L. and therefore are entitled to judgment as a matter of law.

## II

J.L. claims that she was unable to prepare adequately for deposition of Ron and Patti Kienenberger because she had been denied access to Jaret's youth court records. Therefore, she argues, the record was not complete when the District Court granted the Kienenbergers' motion for summary judgment, and the court should have continued the hearing on the motion.

J.L.'s motion to continue the hearing was based on Rule 56(f), M.R.Civ.P., which follows (emphasis added):

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had . . . .

In the affidavit accompanying J.L.'s motion, which was filed the day before the hearing, her lawyer stated that he had deferred deposing Ron and Patti Kienenberger until Jaret's youth court and subsequent medical and psychological records were available. He stated further that without this discovery, he could not prepare adequately for the depositions or for the summary judgment hearing.

J.L. had asked for Jaret's youth court records in a request for production on December 6, 1991. When the Kienenbergers objected on the grounds that the records are privileged under the Montana Youth Court Act, § 41-5-101, MCA et seq., J.L. asked the

7

District Court for an order releasing the records pursuant to § 41-5-603(1)(c). The Kienenbergers then moved for a protective order, pursuant to Rule 26(c), M.R.Civ.P., or in the alternative for in camera review by the court.

Judge McCarvel reviewed the youth court records in camera. At the summary judgment hearing on March 13, 1992, he granted the Kienenbergers' motion for a protective order. As grounds for this action, he stated that J.L. already knew, from the Kienenbergers' affidavits, "all pertinent facts which could be gleaned from Jaret Kienenberger's youth court file." Having served as youth court judge in the criminal proceedings against Jaret, Judge McCarvel was in an excellent position to assess the relevance of Jaret's youth court file.

The District Court has inherent discretionary power to control discovery, based on its authority to control trial administration. State ex rel. Guarantee Insurance Co. v. District Court (1981), 194 Mont. 64, 67-68, 634 P.2d 648, 650. See also In re Marriage of Jacobson (1987), 228 Mont. 458, 464, 743 P.2d 1025, 1028 ("denial of the motion [to compel discovery] lies squarely within the District Court's discretion"). It did not abuse that discretion here.

The issue before the District Court was whether any genuine issue of material fact precluded summary judgment as to Jaret Kienenberger's parents' liability for J.L.'s injuries. Jaret's youth court record was not relevant to the issue of his parents' liability, because that depends, as we have seen, on the existence of a duty to J.L. The Kienenbergers owed no duty to J.L. We hold,

therefore, that the District Court properly exercised its discretion granting a protective order covering all the documents in Jaret's youth court records.

Apart from alleging the importance of Jaret's youth court records, the affidavit accompanying J.L.'s Rule 56(f) motion did not establish why she needed more time to prepare for deposing the Kienenbergers. Their affidavits were filed on January 28, 1992, more than six weeks before the hearing, and both had responded to J.L.'s interrogatories and requests for production by February 11, 1992, more than a month before the hearing. J.L.'s affidavit did not explain why depositions could not have been taken during that month.

We hold that the District Court did not abuse its discretion in tacitly denying J.L.'s Rule 56(f) motion and conducting the summary judgment hearing. In view of the court's finding that J.L. had obtained all of the available relevant information she needed from the Kienenbergers' affidavits, her affidavit is unpersuasive and inadequate. As we held in Howell v. Glacier General Assurance Co. (1989), 240 Mont. 383, 785 P.2d 1018, a district court does not abuse its discretion in denying a Rule 56(f) motion that does not establish how the proposed discovery could preclude summary judgment.

Affirmed.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

Section 27-1-701, MCA, provides that every person is responsible for injury to others caused by his or her failure to exercise ordinary care. The majority casually dismisses this statutory responsibility by claiming that it only applies to each individual's own conduct. However, when a parent fails to exercise ordinary care in the supervision of his or her child, it is, in fact, the parent's conduct with which the law is concerned.

I would adopt the proposed rule of law set forth in Restatement (Second) of Torts § 316 (1965). That rule provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent:
>
> (a) Knows or has reason to know that he has the ability to control his child, and
>
> (b) Knows or should know the necessity and opportunity for exercising such control.

I would, as has been done in other jurisdictions, limit the application of parental liability under § 316 to those situations where the parent was aware of the particular dangerous propensity which caused the harm complained of. *See Pesek v. Discepolo* (Ill. App. 1st Dist. 1985), 475 N.E.2d 3.

As it often does when it finds it convenient, the majority points out that the Legislature has not found it necessary to expand our previous rule of nonliability for parents who fail to exercise reasonable supervision over their children. However, this

11

is a poor excuse for this Court's failure to recognize the obligation imposed on all people under § 27-1-701, MCA, and this Court's responsibility to develop the common law in a manner that both effectuates that obvious public policy, and that is not inconsistent with any other legislative act. *See* §§ 1-1-108 and -109, MCA. The majority has shown no reluctance to develop common law responsibilities in the absence of legislative action where they are consistent with the majority's notion of good public policy. *See Maguire v. State* (Mont. 1992), 835 P.2d 755, 764, 49 St. Rep. 688, 694 (Trieweiler dissenting), (citing *Pence v. Fox* (1991), 248 Mont. 521, 813 P.2d 429; *Story v. City of Bozeman* (1990), 243 Mont. 436, 791 P.2d 767; *Brandenburger v. Toyota* (1973), 162 Mont. 506, 513 P.2d 268; *Kornec v. Mike Horse Mining Co.* (1947), 120 Mont. 1, 180 P.2d 252).

Furthermore, since there was no Montana precedent in effect at the time this case was decided by the District Court, I would reverse the District Court judgment dismissing the plaintiff's complaint and remand this case for further discovery so that each party has a fair opportunity to develop those facts necessary to pursue or defend a claim based upon the aforementioned rule of liability.

For these reasons, I dissent from the majority opinion.

Justice

12

Justice William E. Hunt, Sr., concurs in the foregoing dissent of Justice Trieweiler.

_____
                        Justice