No. 00-765

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 316

JOSEPH TURLEY CRISAFULLI,

Plaintiff/Appellant,

v.

COLIE BASS,

Defendant/Respondent,

and

BASS AUCTION COMPANY, INC.,

Defendant.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gene R. Jarussi (argued), Jarussi & Bishop, Billings, Montana

For Respondent:

James A. Hubble, Charles Frederick Unmack (argued), Hubble, Ridgeway & Phillips, Stanford, Montana

Argued: June 7, 2001

Submitted: June 7, 2001

Decided: December 31, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Plaintiff, Joseph Turley Crisafulli, brought this action in the District Court for the Seventh Judicial District in Dawson County to recover damages from the Defendants, Colie Bass and Bass Auction Company, Inc., for injuries sustained when Crisafulli was struck by a bicycle operated by Bass's son. Following motions for summary judgment by the Defendants, the District Court granted summary judgment in favor of Colie Bass and denied the motion made by Bass Auction Company. The District Court then certified its judgment as final pursuant to Rule 54(b), M.R.Civ.P., and Crisafulli appeals from the District Court's order. We reverse the order of the District Court.

¶2 The issue on appeal is whether, under specified circumstances, a parent has a duty to supervise his or her child in order to prevent unreasonable risk of harm to others.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Joseph Crisafulli filed a complaint in the District Court for the Seventh Judicial District in Dawson County in which he alleged that on June 21, 1997, Bass Auction Company was conducting an auction on its premises when Codie Bass, Colie Bass's son, rode a bicycle through a crowd of spectators and into Crisafulli. Crisafulli alleged that as a result of the collision, his back was seriously injured.

¶4 Crisafulli alleged that Codie Bass was delivering sales tickets from the auctioneer's truck to Bass Auction's trailer or returning from the trailer to the truck to retrieve more tickets at the time of the collision. He therefore alleged two bases for liability. First, that because Codie Bass was acting on behalf of Bass Auction Company, the company is liable

for his negligence based on respondeat superior. Second, he alleged that Colie Bass had a duty to control the conduct of his son and that his failure to do so was a negligent omission. He alleged that this separate form of negligence was also a cause of his injuries.

¶5 Both Defendants moved for summary judgment. The Defendant Bass Auction Company contended that Codie Bass was not its employee and neither delivered tickets nor rode a bike at the auction. Because there was no employment relationship between Codie Bass and the company and because the identity of the person who actually collided with Crisafulli was speculative, Bass Auction Company contended it was entitled to summary judgment. In support of that motion, it submitted the affidavit of Colie Bass which set forth, under oath, the factual basis for the motion.

¶6 Colie Bass moved for summary judgment dismissing the claim against him individually based on this Court's decision in *J.L. v. Kienenberger* (1993), 257 Mont. 113, 848 P.2d 472, where we declined to follow § 316 of the Restatement (Second) of Torts (1965) and held that parents have no independent duty to control the behavior of their children.

¶7 In response to the company's motion, Crisafulli submitted the affidavit of his wife, Pamela, who stated she was present at the auction at the time Crisafulli was injured and stated that the boy who struck her husband had been taking tickets from the auctioneer's pickup to the company trailer and interacting regularly with the adult principals of Bass Auction Company. She stated that the boy's interaction with the adults involved in the auction made it clear to her that he was a member of the Bass family.

¶8 In response to Bass's argument that he individually was not liable as a matter of law, Crisafulli contended that *Kienenberger* is distinguishable and that the District Court should follow § 316 of the Restatement.

¶9 The District Court granted Colie Bass's motion for summary judgment based on our decision in *Kienenberger* and denied Bass Auction Company's motion based on its conclusion that there were material issues of fact regarding whether the child who collided with Crisafulli was acting as an agent for the auction company at the time of the collision.

¶10 The District Court then granted the parties' motion to certify its order as a final judgment pursuant to Rule 54(b), M.R.Civ.P., and Crisafulli appealed from that part of the District Court's order which granted judgment in favor of Colie Bass.

## DISCUSSION

¶11 The issue on appeal is whether the District Court erred when it concluded that a parent has no duty to supervise or control the behavior of a child except under those circumstances statutorily provided and, on that basis, granted summary judgment to the Defendant, Colie Bass.

¶12 When we consider an appeal from a district court order granting summary judgment, we review the district court's order de novo and apply the same criteria considered by the district court based on Rule 56, M.R.Civ.P. *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 55, 297 Mont. 33, ¶ 55, 991 P.2d 915, ¶ 55. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. However, when considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from that evidence will be drawn in favor of the party opposing summary judgment. *Oliver v. Stimpson Lumber Co.*, 1999 MT 328, ¶ 22, 297 Mont. 336, ¶ 22, 993 P.2d 11, ¶ 22 (citing *Joyce v. Garnaas*, 1999 MT 170, ¶ 8, 295 Mont. 198, ¶ 8, 983 P.2d 369, ¶ 8).

¶13 On appeal, Crisafulli contends that because § 27-1-701, MCA, provides that every person is responsible for injury to others caused by his or her failure to exercise ordinary care, we should hold that a parent has a duty to supervise his or her children and that the scope of that duty is defined by § 316 of the Restatement (Second) of Torts (1965). Section 316 conditions liability on knowledge by the parent that he has the ability to control his child and that there is a necessity and opportunity for doing so. Crisafulli points out that when given the opportunity to consider § 316, only three state supreme courts have declined to follow it in the last two decades (citing *Dinsmore-Poff v. Alvord* (Alaska 1999), 972 P.2d 978, 981). However, Crisafulli acknowledges that one of those three supreme courts was the Montana Supreme Court (citing *Kienenberger*, 257 Mont. at 118, 848 P.2d at 475-76). Crisafulli contends that contrary to this Court's characterization in *Kienenberger*, § 316 does not impose liability on a parent for conduct of a child but imposes an independent duty on the parent under limited circumstances and bases liability on breach of that duty. He also points out that this Court has not been reluctant to follow the Restatement of Torts in the past in the absence of legislative action to the contrary and should not be reluctant to do so in this instance.

¶14 Bass responds that actionable negligence arises only from breach of duty and based on this Court's decision in *Kienenberger*, he had no duty to protect anyone from the torts of his child. He contends this Court should not follow § 316 of the Restatement because the Montana Legislature is the appropriate forum for consideration of policy issues surrounding parental liability.

¶15 Section 316 of the Restatement (Second) of Torts (1965) provides as follows:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

¶16 In *Kienenberger,* we were asked to decide whether a rape victim stated a cause of action against the parents of her thirteen year old assailant when she alleged that they owed her a duty to supervise their child appropriately and that they breached that duty by negligently supervising him even though the danger he presented to others was foreseeable. We noted on appeal from summary judgment in favor of the parents that:

> The common law rule, still followed in Montana, is that a parent is not liable for a child's tort, except under the limited circumstances provided in § 27-1-718(2), MCA (parent or guardian of a minor convicted of shoplifting is liable to the seller for the greater of $100 or the retail value of the goods, not to exceed $500), and § 40-6-237, MCA (a city, county, school district or state agency may recover up to $2500 from the parent of a minor who willfully or maliciously destroys its property). . . .

> A parent also may be liable under the doctrine of respondeat superior, if the child is the parent's agent or employee.

*Kienenberger, 257 Mont. at 117-18, 848 P.2d at 475.*

¶17 We then noted that the plaintiff in that action sought an expansion of common law liability by the adoption of § 316. Without elaboration or discussion, we declined to do so. We held:

> Neither this Court nor the Montana legislature has found it necessary in the past to

expand these limited exceptions to the common law rule of nonliability, and we do not find it necessary now.

*Kienenberger, 257 Mont. at 118, 848 P.2d at 476.*

¶18 As noted by the Alaska Supreme Court:

> Interestingly, the cases in which courts have declined to adopt § 316 have involved teenaged children and serious crimes like rape or murder. . . . The opinions rejecting § 316 may thus reflect at least in part a judicial disinclination to hold parents liable for being unable to stop serious delinquency in older children.

*Dinsmore-Poff, 972 P.2d at 981.*

¶19 Those cases rejecting the adoption of § 316 and to which the Alaska Court referred were *Lanterman v. Wilson* (Md. 1976), 354 A.2d 432, 436; *Kienenberger*, 257 Mont. at 118, 848 P.2d at 475-76; *Rodriguez v. Spencer* (Tex. Ct. App. 1995), 902 S.W.2d 37, 43; and *Bell v. Hudgins* (Va. 1987), 352 S.E.2d 332, 334. Of those cases, the only one with any rationale for the court's holding was *Lanterman* where the Maryland Court of Appeals reasoned that:

> As so succinctly pointed out in *Prosser*, *The Law of Torts*, § 123, at 873 (4th ed. 1971), negligence in controlling one's child should not, of itself, be reason to find parental liability, as it 'would be extending the hardships of harassed and exasperated parents too far to hold them liable for general incorrigibility, a bad education and upbringing, or the fact that the child turns out to have a nasty disposition.'

*Lanterman, 354 A.2d at 436.*

¶20 Examples of cases from states where § 316 has been followed are *Vance v. Thomas* (Okla. Ct. App. 1986), 716 P.2d 710, 713; *Mitchell v. Wiltfong* (Kan. Ct. App. 1979), 604 P.2d 79, 82; *Robertson v. Wentz* (Cal. Ct. App. 1986), 232 Cal. Rptr. 634, 637; and *Mitchell v. Allstate Ins. Co.* (Colo. Ct. App. 1975); 534 P.2d 1235, 1237. As with those decisions rejecting § 316, little analysis is to be found in those decisions which follow it. Most simply assume that it is the law and then analyze whether proof of its elements has been established.

¶21 *Mitchell v. Wiltfong*, however, does make one important point about the difference between a parent's liability for the acts of a child (as it was characterized in *Kienenberger*) and the liability imposed pursuant to § 316. In that decision the court pointed out that:

> The decision in *Capps* clearly indicates that parents may be liable for the tortious acts of their child, not because the child's acts are imputed to them, but because of their own negligence in failing to exercise reasonable care to control the child. That is the theory of our many cases involving the negligent entrustment of a vehicle to a known reckless or incompetent driver. (Citations omitted).
>
> Other jurisdictions have recognized a cause of action against the parents of a minor child for injuries intentionally inflicted by the child where the parents know, or should have known, that injury to another was a probable consequence of failure to exercise control over the child. These cases are collected in 54 A.L.R.3d 974 (1973). The Restatement (Second) of Torts, § 316, (1965) puts it this way . . . .

*Mitchell, 604 P.2d at 82.*

¶22 We think the distinction made in *Mitchell* is an important one. Our decision in *Kienenberger* discusses parental liability for a child's tort. So did the District Court order and so does the Respondent on appeal. However, § 316 does not make a parent liable for the torts of a child. It imposes liability on the parent for his or her own failure to exercise reasonable care and then carefully and narrowly defines the circumstances under which that duty arises. It requires that the parent first know that he or she has the ability to control the child and, secondly, that the parent understands the necessity for doing so. It furthermore conditions liability on a finding that the parent's failure under these circumstances created an <u>unreasonable</u> risk of harm to a third person.

¶23 We conclude that imposition of liability on a parent under these limited and exceptional circumstances is not unreasonable and in the absence of any legislative policy to the contrary, adopt § 316 of the Restatement (Second) of Torts (1965) as a reasonable expression of a parent's duty in Montana.

¶24 The Legislature's failure to previously act in this area is no justification for our refusal to do so when squarely presented with the issue.

¶25 The common law of this state includes numerous examples of this Court's willingness

to act where a vacuum exists in an important area of public policy and the rights of the litigants who appear before the Court are involved. See, for example, *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.* (1973), 162 Mont. 506, 513 P.2d 268 (adopting strict liability in tort), *Pence v. Fox* (1991), 248 Mont. 521, 813 P.2d 429 (allowing damages for a minor's loss of consortium); *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767 (rewriting the law of bad faith in commercial transactions); and *Cash v. Otis Elevator Co.* (1984), 210 Mont. 319, 684 P.2d 1041 (adopting the rule of non-delegable duty for owners of elevators).

¶26 As stated by Justice Benjamin Cardozo in his treatise *Law and Literature* (1931), "[T]he common law, unless bound and riveted by statute, has instruments at hand of many varieties and shapes for molding of that justice which is the end of her endeavor."

¶27 The merits of following § 316 are best illustrated by the alternative. Were we to decline to impose a duty along the lines expressed in § 316, a parent who has the ability to control his or her child and knows of the need and opportunity to do so and that failing to do so would create an unreasonable risk of harm to others would have no obligation to act under the circumstances. Relieving people of an obligation to act under those limited and carefully defined circumstances cannot be reconciled with the liability imposed by § 27-1-701, MCA, for failure to exercise ordinary care. We emphasize, however, that our decision does not impose liability on a parent for the acts of a child but for that parent's own failure to exercise reasonable care.

¶28 For these reasons, we reverse our prior decision in *Kienenberger* to the extent that it is inconsistent with this decision and we reverse the order of the District Court granting summary judgment to Colie Bass. This case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Chief Justice Karla M. Gray, specially concurring.

¶29 I concur in the result the Court reaches in this case, but not with everything said in the Court's opinion.

¶30 The common law in Montana prior to *Kienenberger* was that a parent was not liable for a minor child's tort except under limited exceptions enacted by the Legislature or where the child acted as the agent or employee of the parent. *Kienenberger*, 257 Mont. at 117-18, 848 P.2d at 475. The common law remained unchanged after *Kienenberger* as the result of our decision therein that it was not necessary "to expand these limited exceptions to the common-law rule of nonliability" of a parent for a minor child's tort. *Kienenberger*, 257 Mont. at 118, 848 P.2d at 476. The common law on this subject remains the same after our decision in the present case. No new exception to the common law rule that a parent is not liable for a child's tort is created here.

¶31 Our decision today imposes responsibility on a parent for the parent's own conduct or lack thereof. That is, where a parent does not exercise reasonable care in controlling certain types of a minor child's conduct under certain limited circumstances, the parent may be liable for his or her action or inaction. This duty is anything but a generic "duty to supervise" a minor child. Indeed, I predict that a plaintiff alleging a breach of a parent's duty in this regard will have a "tough row to hoe" in avoiding summary judgment and, thereafter, in convincing a jury--among other things--that a parent "knows or should know of the necessity and opportunity" of exercising control over her or his minor child.

¶32 With regard to the Court's overruling of *Kienenberger* "to the extent that it is inconsistent" with the opinion in the present case, I am not persuaded that any inconsistency exists. As stated in that case, we declined to adopt § 316 "as an exception to the common-law rule that parents are not liable for their children's torts." *Kienenberger*, 257 Mont. at 118, 848 P.2d at 475. As discussed above, we do not in this case adopt § 316 as "an exception" to the common law nonliability rule. I suspect, however, that our refusal to do so in *Kienenberger* is commonly read more broadly as rejecting the notion that a parent has a limited duty to control his or her minor child. As a result, I join the Court in overruling the portion of *Kienenberger* that declines to adopt § 316.

/S/ KARLA M. GRAY

Justice Jim Rice, concurring in part and dissenting in part.

¶33 I concur in the result of this case, believing that parents must exercise reasonable care to supervise their children under certain circumstances. However, I object to the standard adopted by the Court herein for determining parental liability as overly broad and unworkable, and therefore dissent from that portion of the opinion.

¶34 The issue set forth in ¶ 2 is whether a parent has a duty to supervise his or her child to prevent harm to others. In answering this question affirmatively, the Court adopts § 316 of the Restatement (Second) of Torts (1965) as the standard by which parental liability is to be judged. It provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it [sic] from intentionally harming others or from so conducting itself [sic] as to create an unreasonable risk of harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

The 1965 Restatement, drafted by a previous generation, focuses not on supervising, but on "controlling" a child, and in so doing, reflects a bias from yesteryear, when it was believed that a parent could actually accomplish such a thing. Thus, despite addressing a question regarding a parent's obligation to *supervise* a child, the Court imposes a duty to *control* a child. From my observation of many others, and from my own endeavors, including 19 years of trying every approach to child rearing from Spock's loving flexibility to Dobson's loving discipline, I am convinced that controlling one's child is a notion far too elusive to support the imposition of parental liability. Even parents who actively and responsibly supervise their children can find it difficult, if not impossible, to control their children.

¶35 Further, § 316 is practically indiscernible. A parent has the duty thereunder to control a child if he or she "has reason to know that he has the ability to control his child." When, exactly, should a parent have reason to know that he or she has the ability to control the child? Perhaps a parent knows this when his or her toddler is tucked into bed and asleep. However, when older children are running around the neighborhood or teenagers are heading downtown in their own car, most parents would claim that the control they have over their children is virtually nonexistent.

¶36 This unworkability of § 316 was partially addressed by the dissenting opinion in *J.L. v. Kienenberger*. Justice Trieweiler stated:

> I would, as has been done in other jurisdictions, limit the application of parental liability under Section 316 to those situations where the parent was aware of the particular dangerous propensity which cause the harm complained of. See *Pesek v. Discepolo* (Ill. App. 1st Dist. 1985), 475 N.E.2d 3.

*Kienenberger,* 275 Mont. at 121, 848 P.2d at 477. I would incorporate this standard within a parental duty to supervise. Thus, if a child has previously demonstrated a particular dangerous propensity, and a parent fails to protect others from that propensity by reasonably supervising the child, then liability should be imposed. I would adopt such a standard of parental liability as an alternative to § 316, and remand this case for further proceedings consistent with such a standard.

/S/ JIM RICE