

DA 11-0164

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 299

STYREN FARMS, INC., and RILEY STYREN,

Plaintiffs and Appellants,

v.

SHERRY ANN ROOS,

Defendant and Appellee.

APPEAL FROM:     District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DV 07-77
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Dale L. Keil, Keil Law Firm, P.C., Conrad, Montana

For Appellee:

William J. Gregoire, Steven J. Fitzpatrick, Smith, Walsh, Clarke &
Gregoire, PLLP, Great Falls, Montana

Submitted on Briefs:  October 12, 2011

Decided:  November 29, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Plaintiffs Styren Farms, Inc. (the "Farm") and Riley Styren ("Riley") (collectively "Styren"), appeal from various rulings of the Ninth Judicial District Court, Pondera County, and a subsequent jury verdict finding Defendant Sherry Ann Roos ("Roos") not negligent after an automobile collision with Riley.  We affirm.

## BACKGROUND

¶2     On the morning of May 8, 2006, both Roos and Riley were on their way to school. Roos was driving, with her younger brother, Brandon, and younger sister, Tamara, from their home in Conrad, Montana, to school in Power, Montana, an approximately 30 minute drive.  The car Roos was driving was owned by her mother, Julia Roos ("Julia") and Curtis Stordahl ("Stordahl").  At the time of the collision, Roos was heading east on Midway Road (part of Highway 91).  Riley was driving to school in Conrad.  The car Riley was driving was owned by the Farm.  Riley was traveling north on the Brady Frontage Road (also part of Highway 91).  The Brady Frontage Road meets Midway Road southeast of Conrad, forming a T intersection.  There is a stop sign on the Brady Frontage Road at this intersection.  Midway Road does not have a stop sign.  See diagram below.[1]

---

[1] The diagram is not drawn to scale, and is for illustrative purposes only.  It represents only the T intersection.  Just before the T intersection, Midway Road climbs a hill and curves from southeast to east.  The crest of the hill is near the T intersection in the diagram.

2



¶3　The parties do not agree on whether Riley stopped at the stop sign before turning left onto Midway Road toward Conrad. After the collision, at the hospital, Riley told a sheriff's deputy that he did not stop at the stop sign. At trial, Riley testified that he did stop, as did another witness, Ozzy Samsal. Roos and her brother, Brandon, testified that Riley did not stop.

¶4　The parties do agree that Riley's vehicle was struck by Roos' vehicle in the westbound lane of Midway Road, at the approximate location of the "X" in the above diagram. Riley's car ended up facing northwest in the ditch on the north side of Midway Road, represented by the "Y" in the above diagram. Roos' car ended up facing east, in the westbound lane of Midway Road, represented by the "Z" in the above diagram. The rear driver's side passenger door and rear quarter panel of Riley's vehicle were damaged, and the front end of Roos' car was damaged.

¶5 In October 2007, Styren filed a complaint against Roos, Julia, and Stordahl. The complaint alleged claims of negligence against Roos, and negligent entrustment and liability under the family purpose doctrine against Julia and Stordahl. Styren sought damages for personal injury, property damage, and punitive damages.

¶6 Julia and Stordahl sought summary judgment on the claims against them, which was granted. The case proceeded to trial on the negligence claim against Roos. The jury trial began on December 6, 2010. The jury returned its verdict on December 9, 2010, finding Roos was not negligent. Judgment against Styren was entered on December 17, 2010. Styren filed a motion for a new trial; however, the District Court failed to rule within 60 days, thus the motion was deemed denied. This timely appeal followed. We will discuss further facts, as necessary, below.

¶7 We restate the issues as follows:

¶8 *Issue One: Did the District Court err when it granted summary judgment to Julia?*

¶9 *Issue Two: Did the District Court err when it did not grant a new trial?*

## STANDARDS OF REVIEW

¶10 We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. *PPL Montana, LLC v. State of Montana*, 2010 MT 64, ¶ 84, 355 Mont. 402, 229 P.3d 421. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *PPL*, ¶ 84. Once the moving party has met

4

its burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *PPL*, ¶ 84. Conclusory statements are insufficient to raise a genuine issue of material fact. *PPL*, ¶ 84.

¶11 When the basis of a motion for a new trial is insufficiency of the evidence, we review the denial of the motion de novo. *Fish v. Harris*, 2008 MT 302, ¶ 8, 345 Mont. 527, 192 P.3d 238; *Giambra v. Kelsey*, 2007 MT 158, ¶ 27, 338 Mont. 19, 162 P.3d 134 (announcing the de novo standard and overruling a host of cases that stated the standard of review for a ruling on a motion for a new trial based on insufficiency of the evidence was for a manifest abuse of discretion). We determine whether there was substantial evidence to support the verdict. *Fish*, ¶ 8. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it may be less than a preponderance of the evidence, but must be more than a "mere scintilla." *Fish*, ¶ 8.

¶12 When the basis of a motion for a new trial is an irregularity in the proceedings or surprise, we review the denial of the motion for a manifest abuse of discretion. *Westmark International Corp. v. Gold Hill Placers, Inc.*, 2003 MT 119, ¶¶ 7, 14, 315 Mont. 492, 70 P.3d 731. A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 11, 334 Mont. 86, 146 P.3d 714. The manifest abuse of discretion standard requires that the abuse of discretion be so significant as to materially affect the substantial rights of the complaining party. *Cooper v. Hanson*, 2010 MT 113, ¶ 28, 356 Mont. 309, 234 P.3d 59.

## DISCUSSION

¶13 *Issue One: Did the District Court err when it granted summary judgment to Julia?*

¶14 Julia moved for summary judgment on the only claims against her – negligent entrustment and vicarious liability via the family purpose doctrine.[2] The District Court granted Julia's motion, finding "there is no evidence to indicate that Julia Roos should have known Sherryann was not a competent driver." Further, the District Court found "[t]here is similarly no evidence of an agency relationship [regarding the family purpose doctrine]." In reaching this ruling, the District Court disregarded "[m]ost of the affidavit of Delbert Styren . . . because no foundation of personal knowledge for the statements is set forth."

¶15 Styren argues on appeal that, based upon the "facts" in Delbert Styren's (Delbert) affidavit, Julia was negligent in sending Roos and her siblings "down the highway" in her (Julia's) car.

### A. Negligent Entrustment

¶16 Generally, a parent is not liable for the tortious acts of his or her child, except under limited statutory circumstances. *Crisafulli v. Bass*, 2001 MT 316, ¶ 16, 308 Mont. 40, 38 P.3d 842. That said, a parent can be liable, *not for the tortious acts of his or her child*, but for the parent's *own* failure to exercise reasonable care. *Crisafulli*, ¶¶ 22, 27 (emphasis added). In other words, the parent is not liable for the alleged tortious act of

---

[2] Stordahl also moved for summary judgment and his motion was granted by the District Court. However, Styren does not challenge that ruling on appeal.

6

the child – negligent entrustment is a standalone tortious act of the parent. For liability to be imposed under this limited circumstance, the parent must (1) "know that he or she has the ability to control the child[;]" (2) "the parent understands the necessity for doing so[;]" and (3) the parent's failure to exercise reasonable care "under these circumstances create[s] an *unreasonable* risk of harm to a third person." *Crisafulli*, ¶ 22 (emphasis in original).

¶17 Negligent entrustment requires more than simply allowing a young person to operate a vehicle. *McGinnis v. Hand*, 1999 MT 9, ¶ 29, 293 Mont. 72, 972 P.2d 1126; *Smith v. Babcock*, 157 Mont. 81, 88-89, 482 P.2d 1014, 1018 (1971). In *McGinnis*, we concluded that even evidence showing that a driver was "underage for driving purposes or that she was not licensed to drive" would "be insufficient[,]" without more, "to establish lack of competence" as a reasonable and prudent driver. *McGinnis*, ¶ 29. In *McGinnis*, the plaintiff did not provide any evidence that the driver was not competent, or that she had a reputation for driving negligently, or that the defendant (for the negligent entrustment claim) should have known the driver was not competent to drive or would drive in a manner creating an unreasonable risk to others. *McGinnis*, ¶ 29. Because the plaintiff did not meet his burden, summary judgment against him was upheld.

¶18 Similarly, in *Smith*, we found the record devoid of any indication the minor driver (16 years old) was incompetent or that Smith (the minor driver's uncle) should have "foreseen the accident." *Smith*, 157 Mont. at 89, 482 P.2d at 1018. The minor driver was "duly licensed by the State of Montana to operate a vehicle after fulfilling the various

legal requirements, and there is no evidence on the record to indicate he was other than a competent driver." *Smith*, 157 Mont. at 89, 482 P.2d at 1018. Based upon these facts, we held, as a matter of law, that Smith was not negligent in entrusting his vehicle to his minor nephew.

¶19 In this case, the undisputed facts compel the same conclusion as in *McGinnis* and *Smith*. There is absolutely no evidence that Julia knew, or should have known, that Roos was an incompetent driver, or that Julia knew Roos would drive in a manner that created an unreasonable risk to others. At the time of the collision with Riley, Roos had a valid Montana driver's license, had received no traffic citations, and was involved in no accidents as a driver.

¶20 To refute these facts, Styren relies on Delbert's affidavit. However, as the District Court correctly pointed out, nowhere in Delbert's affidavit does it state Delbert had personal knowledge of the matters asserted in the affidavit. Further, it contains statements that Delbert could not have personal knowledge of, such as: Julia's knowledge about Roos' thoughts on May 8, 2006, Julia's knowledge about Roos' driving capabilities on May 8, 2006, what time Roos left home for school, and that Roos "was traveling over the speed limit" on May 8, 2006. Delbert was asked about the basis for his statements in the affidavit at his deposition. He admitted that he learned some of the information "through my attorney[,]" that he had no knowledge of Roos' driver's training or driving experience, and that he had never spoken to Julia.

¶21　We agree with the District Court that Styren did not meet its burden of proof to avoid summary judgment. Nothing in Delbert's affidavit creates a genuine issue of material fact. The District Court properly granted summary judgment in Julia's favor on the negligent entrustment claim.

## B. Family Purpose Doctrine

¶22　The family purpose doctrine holds the owner of a family vehicle liable for the negligence of a member of the family. *Smith*, 157 Mont. at 86, 482 P.2d at 1016-17. This Court has rejected the family purpose doctrine several times; *Smith*, 157 Mont. at 86, 482 P.2d at 1017; *Castle v. Thisted*, 139 Mont. 328, 332, 363 P.2d 724, 726 (1961); *Clawson v. Schroeder*, 63 Mont. 488, 499, 208 P. 924, 927 (1922); and we reject it again in this case. Simply because Julia gave Roos permission to use a vehicle titled in Julia's name does not make Julia liable for Roos' alleged negligence. *Clawson*, 63 Mont. at 499, 208 P. at 927. The only relationship in the present case was one of family – mother and daughter – and that alone cannot create liability in Julia; there must have been an agency relationship. *Castle*, 139 Mont. at 332, 363 P.2d at 726; *Clawson*, 63 Mont. at 494-95, 208 P. at 926; *Smith*, 157 Mont. at 86, 482 P.2d at 1017.

¶23　We agree with the District Court that Styren presented no evidence regarding agency. Again, Delbert's affidavit will not suffice for the reasons stated in ¶ 20, and bare allegations that Roos was driving herself and her siblings to school "at the express request and direction of her mother" cannot defeat Julia's motion for summary judgment. *PPL*, ¶ 84. The cases regarding agency cited by Styren are inapposite. *Williams v. State*

*Medical Oxygen & Supply, Inc.*, 265 Mont. 111, 874 P.2d 1225 (1994), deals with teenage employees of a company moving mattresses at the request of Cloutier, an officer and director of that company, using a truck belonging to another of Cloutier's companies. *Williams* has nothing to do with the familial relationship in the present case. Nor does *Vollmer v. Bramlette*, 594 F. Supp. 243 (1984) (U.S. Dist. LEXIS 24427), in which the agency relationship between an employer and employee was not contested.

¶24 In sum, we agree with the District Court that Styren did not meet its burden to raise genuine issues of material fact in opposition to Julia's motion for summary judgment. Julia was entitled to judgment as a matter of law on both the negligent entrustment and family purpose doctrine claims.

¶25 *Issue Two: Did the District Court err when it did not grant a new trial?*

¶26 After the jury returned its verdict finding Roos was not negligent, Styren sought a new trial pursuant to M. R. Civ. P. 59(a) and § 25-11-102, MCA. The bases for the motion were: (1) an irregularity in the proceedings occurred when Styren was not allowed to introduce evidence of Trooper Duram's "improper" investigation, and when Trooper Duram was not required to give live testimony; (2) an irregularity in the proceedings and surprise occurred when Roos' counsel "misstated the evidence[;]" and (3) there was insufficient evidence to support the jury's verdict, and the verdict was against the law. The District Court failed to rule on the motion, and it was deemed denied pursuant to M. R. Civ. P. 59(d).

¶27 M. R. Civ. P. 59(a) provides, in relevant part, "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons provided by the statutes of the state of Montana." Section 25-11-102, MCA, provides:

> **Grounds for new trial.** The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of the party:
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
> (2) misconduct of the jury. Whenever any one or more of the jurors have been induced to assent to any general or special verdict or to a finding on any question submitted to them by the court by a resort to the determination of chance, the misconduct may be proved by the affidavit of any one of the jurors.
> (3) accident or surprise that ordinary prudence could not have guarded against;
> (4) newly discovered evidence material for the party making the application that the party could not, with reasonable diligence, have discovered and produced at the trial;
> (5) excessive damages appearing to have been given under the influence of passion or prejudice;
> (6) insufficiency of the evidence to justify the verdict or other decision or that it is against law;
> (7) error in law occurring at the trial and excepted to by the party making the application.

¶28 The arguments Styren makes on appeal are substantially similar, if not identical, to the arguments made in District Court. We address each argument in turn.

**A. Did the District Court err in its rulings on Trooper Duram's "improper" investigation and the reading of his deposition into evidence?**

¶29 A bit of background on this issue is necessary. Trooper Duram was the Montana Highway Patrol Trooper who investigated the collision between Roos and Riley. His investigation consisted of taking measurements at the scene, contacting those involved in

11

the collision, and making a drawing of the scene. The end result was his three page report and a citation issued to Riley for failure to yield. That citation was later dismissed.

¶30 Styren makes two arguments on appeal in relation to Trooper Duram, although rather inartfully. First, Styren argues it was error to prohibit the admission of the "facts of [Trooper] Duram's improper investigation" at trial. This is presumably the report and related "evidence" gathered by the Montana Highway Patrol ("MHP") in response to a complaint made against Trooper Duram by Styren's counsel. Second, Styren argues it was improper to read Trooper Duram's deposition in lieu of his live testimony. We discuss each argument in turn.

### 1. The Montana Highway Patrol Investigation

¶31 Counsel for Styren filed a formal complaint against Trooper Duram in 2009, alleging his "field notes and sworn testimony are clearly incorrect."[3] Counsel wanted the "entire investigation" to be "reviewed, corrected, and amends made to the parties who have improperly relied upon the training, honesty and reputation of the Montana Highway Patrol." According to a letter from the MHP, after an investigation, the complaint was sustained and some undisclosed disciplinary action was taken against Trooper Duram.

¶32 At the pretrial conference, Roos moved to exclude evidence of the complaint, the report, and the conclusions of the investigation conducted by the MHP. The District

---

[3] There was also a formal complaint made against Roos' expert, Dr. Lee. The complaint alleged Dr. Lee was not a licensed private investigator. It is unclear from the record who made this complaint, and co-counsel for Styren claimed that "As far as I know, that didn't come out of our office."

12

Court ruled that "no mention of [formal complaints] is going to come in." Further, the District Court ruled that Styren was:

> entitled to bring up inconsistencies that [Trooper Duram] may have made or mistakes he may have made in the investigation. There is to be no mention of any complaints or investigation by his – by the [MHP], no reference at all. The jury is to make a decision regarding his credibility and the valuation of the investigation he conducted, based on the evidence that's presented in this courtroom, and based on witnesses who can testify based on their own knowledge, not an investigation that was done subsequent by [the MHP].

¶33 Styren called Sergeant Bender (Sgt. Bender) of the MHP to testify. Sgt. Bender was the person who investigated the complaint against Trooper Duram. He testified to the various measurements he made at the scene, which differed from Trooper Duram's measurements. Sgt. Bender did not testify about the complaint, but did say he was assigned to re-measure the scene by his captain.

¶34 "[F]actual findings resulting from special investigation of a particular complaint, case, or incident" are inadmissible hearsay. M. R. Evid. 803(8)(iv); *Stevenson v. Felco Industries, Inc.*, 2009 MT 299, ¶¶ 29-30, 352 Mont. 303, 216 P.3d 763. Our rulings on this issue have been "unequivocal." *Stevenson*, ¶ 30.

¶35 Styren has cited no authority to support its argument that the District Court erred in excluding the MHP report or its factual findings. Styren simply alleges it was an irregularity pursuant to § 25-11-102(1), MCA. However, conclusory allegations of error do not suffice. It is not our obligation to conduct legal research to support Styren's argument. *In re J.D.N.*, 2008 MT 420, ¶ 16, 347 Mont. 368, 199 P.3d 189; M. R. App. P.

13

12(1)(f) (the argument shall contain citation to authorities.) Styren has not met its burden on appeal to demonstrate that the District Court erred.

### 2. Trooper Duram's Deposition

¶36 Styren alleges the District Court erred when it allowed Trooper Duram's deposition to be read into evidence at trial instead of requiring Trooper Duram to be personally present. Roos argues the District Court correctly concluded that Trooper Duram was not required to be personally present because he was unable to attend and testify because of illness.

¶37 M. R. Civ. P. 32(a)(3)(C) provides, in relevant part, that the "deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment[.]" Similarly, M. R. Evid. 804(b)(1) provides, in relevant part, that if a witness is unavailable, testimony given in a deposition may be used "at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered[.]" Under that rule, a witness in unavailable when the witness "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]" M. R. Evid. 804(a)(4).

¶38 The District Court did not require Trooper Duram to be present because, according to a letter from his doctor, "[Trooper Duram] is unable to sit for long periods of time due to recent surgical intervention" on his back, and his doctor disqualified him "from

14

appearing in court for at least the next 6 months." The District Court said "I am, in no way, going to require [Trooper] Duram to be present against medical advice."

¶39 Again, Styren has cited no authority to support its argument that the District Court erred in allowing Trooper Duram's deposition to be read in lieu of live testimony. For the same reasons stated in ¶ 35, we conclude Styren has not met its burden on appeal to demonstrate that the District Court erred.

**B. Should a new trial be granted based upon defense counsel's misstatement during his closing argument?**

¶40 Styren argues that defense counsel "misstated the evidence by referencing false statements in his closing argument." The statement they argue was false was that Roos' brother Brandon spoke to Trooper Duram at the hospital and told Trooper Duram that Riley did not stop at the stop sign. They argue Brandon does not remember speaking to Trooper Duram at the hospital. This, according to Styren, constitutes surprise.

¶41 Roos argues that, while it is technically true that defense counsel misspoke, the nature of the mistake cannot constitute surprise. According to Roos, counsel simply referred to the wrong law enforcement officer in his closing argument – Brandon told a sheriff's deputy, rather than Trooper Duram, that Riley did not stop at the stop sign.

¶42 A party seeking a new trial under § 25-11-102(3), MCA, must demonstrate: (1) the moving party was actually surprised; (2) the facts causing the surprise had a material bearing on the case; (3) the verdict or decision resulted mainly from these facts; (4) the surprise did not result from the moving party's negligence or inattention; (5) the moving party acted promptly and claimed relief at the earliest opportunity; (6) the moving party

15

used every means reasonably available at the time of the surprise to remedy it; and (7) the result of a new trial without the surprise would probably be different. *Clark v. Bell*, 2009 MT 390, ¶ 30, 353 Mont. 331, 220 P.3d 650.

¶43 Styren's arguments in this regard are wholly without merit. While it is true that Roos' counsel said the wrong name, that does not in any way change the content of Brandon's statement. Brandon testified in his deposition, which was read to the jury, as follows:

Q: Do you remember a sheriff's deputy coming?
A: Yeah, I remember him showing up.
Q: Do you know who it was?
A: I can't remember who it was, no.
Q: Do you remember what he asked?
A: No.
Q: Do you remember what anybody said?
A: To the sheriff?
Q: Yeah.
A: I told him – he asked me what happened, and I told him that the other car drove through the stop sign and we were coming down the road and we hit him.
Q: Did the officer talk to Sherry also?
A: I'm pretty sure.
Q: Do you remember the highway patrolman?
A: No.
Q: Do you remember seeing or talking to the highway patrolman?
A: No.
Q: Have you ever known [Trooper Duram]?
A: Huh-uh.
Q: Never talked to him, never seen him?
A: Nope.

¶44 The surprise argued here is that Roos' counsel got the name of the law enforcement official wrong. It is inconceivable that the name of the law enforcement official had any bearing whatsoever on the verdict. No matter who Brandon made the

statement to, Brandon in fact made the statement. That is a point that Styren cannot, and does not, argue. It strains credulity to argue that the jury would have decided the case differently had defense counsel said "sheriff's deputy" versus "Trooper Duram." Styren has not met the elements under *Clark*. We agree with the District Court that a new trial should not have been granted due to surprise under § 25-11-102(3), MCA.

### C. Was the jury's verdict legal and supported by substantial evidence?

¶45 Here Styren argues that because the collision occurred in Riley's lane, there is no possible way the jury could have found that Roos was not negligent. Further, Styren argues the jury's verdict was "against the law" because Roos failed to drive on the right side of the road in violation of § 61-8-321, MCA (Jury Instruction 25), or made an unsafe lane change in violation of "Montana law" (Jury Instruction 33).

¶46 Roos argues that Styren ignores facts that were, and still are, in dispute to reach these conclusions, and that substantial evidence supports the jury's verdict. Further, Roos argues that Styren's reading of Montana law is extreme.

¶47 We agree with Roos and conclude that substantial evidence supports the jury's finding that Roos was not negligent, and the verdict was not contrary to Montana law. While Styren alleges both errors of fact and law, the only real issues are issues of fact. Styren does not argue that the District Court erred in instructing the jury, but rather that the jury's conclusions under certain instructions violated the law. However, whether a legal duty was breached is a question of fact for the jury to decide. *Estate of Strever v. Cline*, 278 Mont. 165, 175, 924 P.2d 666, 672 (1996). Similarly, whether Roos violated

17

the statutes included in Jury Instructions 25 and 33 is also a question of fact left for the jury.[4]  *See Massee v. Thompson*, 2004 MT 121, ¶ 31, 321 Mont. 210, 90 P.3d 394 (discussing evidence presented to the jury regarding sheriff's failure to comply with various statutes).

¶48    It was for the jury to decide between two competing sets of facts presented, both with evidentiary support in the record.  Styren presented testimony that Riley stopped at the stop sign, then proceeded through the intersection and was not blocking Roos' path of travel in the eastbound lane of Midway Road.  Styren wanted the jury to conclude that Roos was driving east in Riley's westbound lane, and therefore she was negligent.  However, Roos presented testimony that Riley did not stop at the stop sign, but rather proceeded through the intersection where Roos, in an attempt to avoid hitting him, swerved into the westbound lane because Riley was blocking her path of travel in the eastbound lane.  Roos wanted the jury to believe that Riley caused the collision by running the stop sign and obstructing her lane.  The jury chose to believe Roos' evidence, which is precisely the function of a jury.  *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 50, 293 Mont. 97, 973 P.2d 818 (resolving conflicts in the evidence, judging the credibility of witnesses, and finding the facts are uniquely within the province of the jury).  We find nothing in the record to disturb the jury's verdict, and we will not substitute our judgment for that of the jury's.  *Massee*, ¶ 62.  There is substantial evidence to support the jury's verdict.

---

[4] It should be noted that this case was not a negligence per se case.

## CONCLUSION

¶49    For the reasons stated above, we affirm the District Court.


                                        /S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS